Filed 2/21/14  P. v. Vetter CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RANDY EARL VETTER,<br><br>    Defendant and Appellant. | F064818<br><br>(Super. Ct. Nos. 10CM2863,<br>11CM1723)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

William I. Parks, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found defendant Randy Earl Vetter guilty of burglary (Pen. Code, § 459)[1] and theft (§ 484, subd. (a)) of a Wal-Mart. He was sentenced to a four-year term with three years to be served in county jail and one year under post-release supervision.

On appeal, Vetter contends: (1) the jury instructions on reasonable doubt violated his right to due process; (2) the trial court abused its discretion by imposing the middle term for the burglary conviction; (3) fees for probation services may not be imposed because the trial court did not orally impose those fees; (4) the imposition of fees without a determination of Vetter's ability to pay was error; (5) the trial court erred by imposing two, one-year enhancements for prison priors; and (6) he was denied effective assistance of counsel because of various omissions by his attorney. The People concede the third and fifth claims of error.

We agree with the parties that Vetter may not be subject to fees that were not orally announced by the court and that he should have received only one sentencing enhancement for serving a single prior prison term. We therefore strike one, one-year sentencing enhancement and order the court to correct the minute order for the sentencing hearing. We remand the matter to the trial court to determine what portion of Vetter's three-year term will be served in county jail and what portion, if any, will be served under mandatory supervision. In all other respects, we affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

On the evening of April 30, 2011, Gerald Butts and Warren Arnold were working together as plainclothes loss-prevention agents at a Wal-Mart in Hanford. The agents were walking the floor conducting surveillance when Vetter caught their attention. Butts first noticed Vetter in the cosmetics department with a woman, later identified as Tisha Couch. They had a shopping cart. Vetter selected several items of cosmetics and "started looking around a lot," which was suspicious to Butts. Couch walked away with the cart,

---

[1]Subsequent statutory references are to the Penal Code unless otherwise noted.

and Vetter remained in the cosmetics area with some merchandise. Vetter then went to the women's underwear department where he met Couch and placed some items in the shopping cart.

Vetter took the shopping cart and walked to the men's department by himself. He selected several packages of socks, a wallet, and a belt and put them in the cart. He went to the shoe department, selected a pair of boots, which were packaged in a box, and placed the boot box in the cart. He headed to the front of the store with the cart and stopped near a fitting room in the women's department. Still alone, Vetter removed the boots, two packages of socks, and two cosmetic items from the shopping cart and took them to the jewelry counter, where he paid for the items. The merchandise was placed in two plastic Wal-Mart shopping bags. Butts told Arnold to follow Vetter outside while he remained in the store to look for Couch.

Arnold followed Vetter out of the store and saw him walk across the parking lot to his truck. From the front of the store, Arnold observed Vetter put the items he had just purchased in the truck. Vetter first put the bagged items on the driver's seat and then removed the items from the bags. Vetter smoked a cigarette and put the empty plastic Wal-Mart shopping bags in his pants pocket. After about five minutes outside, Vetter walked back in the store.

Arnold watched Vetter walk to the underwear department, where he met Couch. She had a shopping cart. Vetter took a belt from the cart, removed its plastic hanger, and put the belt on. Butts observed Vetter take a wallet out of the cart, take it out of a box, and put it in his pocket. Arnold saw Vetter walk by himself to the shoe department and take a box of shoes that looked like the shoes he had just purchased. Vetter went to the men's department and got some socks. He then walked back to the women's underwear department and met up with Couch. He took the empty Wal-Mart shopping bags out of his pocket and put some socks, the shoe box, and some cosmetics in the shopping bags.

Vetter took some women's underwear from the shopping cart and walked to the registers at the front of the store. He was alone and without a shopping cart.

At the register, Vetter placed the two shopping bags with the shoes and socks on the floor. The cashier rang him up for the women's underwear, and Vetter paid for the items with a Red Cross debit card. He picked up the two shopping bags from the floor, took the bag of items he paid for, and walked to the exit. At this point, Butts approached Vetter and identified himself as Wal-Mart security. Arnold joined them. Butts asked Vetter if he had any unpaid merchandise with him and Vetter said no. Butts told Vetter that he saw him put the boots, socks, and cosmetics in the bags and put on the belt and conceal the wallet. Vetter agreed to go to the loss-prevention office with the two agents.

In the loss-prevention office, Arnold told Vetter, "I need the merchandise that you bagged up back." Vetter put the two bags of items he had not paid for on a table. The bags contained shoes, socks, and some makeup. Vetter also started removing the belt he was wearing. Butts said he would need the wallet back, and Vetter placed the wallet on the table. The value of the merchandise taken was around $80. The store policy was to call the police if the merchandise taken was worth $25 or more.

Hanford Police Officer Mark Carrillo was dispatched to Wal-Mart. He met Vetter in the loss-prevention office. Carrillo conducted a pat-down search of Vetter and found a clothing label tag in his rear pants pocket. He noticed that Vetter was wearing more than one shirt, and one of the shirts appeared to match the clothing tag. Vetter agreed to speak with Carrillo. He told the officer that he had nothing and he needed to get some things. Vetter said he did not come to Wal-Mart to steal and he was not a thief.

Carrillo found that Vetter had $2.25 in cash, a Red Cross ATM card, which he had received after his house burned down, and a brown leather day planner. Vetter said there was about $80 on the Red Cross card. Carrillo saw that the day planner had a list of items including boots, socks, hair scissors, safety pins, belt, and wallet. There was also a Wal-Mart receipt.

Carrillo was informed that Vetter had been stealing things together with a woman who was still in the store. After speaking with Vetter, Carrillo met with Couch near a clothing aisle. She appeared "[v]ery fidgety, nervous [with] rapid hand movements [and a] stutter in her speech," and Carrillo concluded that she was under the influence of methamphetamine. In her purse was a shirt that was identical to one of the shirts Vetter was wearing. Couch said Vetter put it there.

The Kings County District Attorney filed a two-count information against Vetter on September 6, 2011. The information alleged that Vetter unlawfully entered a commercial building, Wal-Mart, with the intent to commit larceny (§ 459, burglary, count 1) and stole the personal property of Wal-Mart (§ 484, subd. (a), theft, count 2). It was further alleged that Vetter had four prior criminal convictions and had served a prison term for those offenses. (§ 667.5, subd. (b).)

On January 30, 2012, a jury trial began. The next day, outside the presence of the jury, Vetter entered a conditional admission of two of the alleged prior convictions with the understanding that this would result in a one-year enhancement to any sentence imposed in the current case. Vetter admitted that, in June 2004, he was convicted of a violation of former section 12312, possession of materials with intent to make an explosive or destructive device, and former section 12303, possession of a destructive device other than fixed ammunition. (Stats. 1978, ch. 579, § 46; Stats. 1983, ch. 1092, § 329.) The court struck the remaining allegations of prior criminal convictions at the request of the People.

Butts, Arnold, and Carrillo testified for the People. In addition to describing his observations of Vetter, Arnold testified about the video surveillance system at Wal-Mart. He reviewed surveillance recordings after the incident of April 30, 2011. Not every portion of the incident was recorded. For example, there was no recording of Vetter putting on the belt because there was no video camera at the underwear aisle where he put the belt on.

5.

There were six video clips of Vetter:  (1) at the cosmetics aisle, (2) at the jewelry counter paying for items, (3) leaving the store after his first purchase, (4) reentering the store, (5) at the register the second time he bought items, and (6) being stopped by Butts and Arnold.  These recordings were saved.  Later, however, when an investigator from the district attorney's office requested surveillance video, only four of the clips were available.  The video clips of Vetter at the jewelry counter paying for items and reentering the store had been taped over.[2]

Arnold believed all six video clips were important to the investigation. Vetter's attorney asked what happened to the two missing clips.  Arnold testified that, on the night of the incident, they burned two discs of the six video clips—one for Wal-Mart and one for the police.  But when Arnold looked in the store's file for the disc to respond to the investigator's request, it was not there.

Vetter testified on his own behalf.  He admitted that he had been convicted of possession of a destructive device and possession of materials with the intent to make a destructive device.  He had entered a guilty plea and was sentenced to five years eight months in prison for the offenses.  He spent 2 years 10 months in prison and was paroled in September 2007.  He was discharged from parole 13 months later.  Vetter described these offenses as "like a hobby" that started with fireworks.  He said, "[I]t progressed from there.  And, then, it went into other things and, then, a blasting cap ended up going off in my hand."  The explosion blew off the tips of the index and middle fingers and thumb of his left hand.

Vetter said he went to Wal-Mart on April 29, 2011, and bought a belt, a wallet, and a day planner.  He paid for the items with a Red Cross debit card.  A few days earlier,

---

[2]Arnold did not tape over the video clips.  He testified that when there were old videos saved on the hard drive, other employees would erase them without checking what they were.

Vetter had been in a fire, and he "got out with a pair of boxers .…" He lost everything else he owned.

On April 30, 2011, Vetter went to Wal-Mart with Couch, his girlfriend at the time. He had about $45 in cash and the Red Cross card. He was wearing the belt and carrying the wallet he had bought the night before. Vetter tried on a pair of boots while he was in the store and left them on. He put the shoes he had been wearing in the box for the boots. He bought the boots, socks, and some underwear. After he completed his purchase, he went out to his truck and smoked a cigarette.[3]

Then Vetter went back into the store to get Couch. He carried the two bags of merchandise he had just purchased. Couch had a shopping cart that was completely full. Vetter tried to coax her out of the store and told her that he only had about $17 or $20 left. Couch gave him a few of the items she most wanted, and he went to the front of the store to pay for those items. At this point, Vetter had taken off the boots he had bought. He testified, "[W]hen I came back in, I had taken the boots off, put them back in the box and I grabbed a box of—a new box of boots and put those in there."[4] His attorney asked why he exchanged the boots he had been wearing for another new pair, and Vetter responded, "Something to do," but he was not trying to defraud anybody.

As Vetter walked out the door, someone said, "Randy, are you going to pay for that," and Vetter stopped. He put down all his shopping bags and Butts told him not to

---

[3]Vetter disputed how far away he had parked from the entrance of the store. Arnold testified that he watched Vetter from near the front of the store and Vetter's truck was parked five or six parking spaces from the store, a distance of about 50 to 100 feet from Arnold. Vetter testified he parked much farther from the store, at a distance of about 340 feet from the entrance. Vetter's attorney argued it would be impossible for a person standing so far away to see what Vetter was doing in the cab of his truck.

[4]On cross-examination, Vetter explained that he was still wearing the newly purchased boots when he reentered the store. He went to the shoe section, took off the boots and put on his old shoes (which had been in the shoe box). He then apparently left the boots he had been wearing and took a new box of boots of the same kind.

7.

worry about them. He went to a little office with Butts. Later, a woman came into the office with Vetter's bags. Butts talked about Wal-Mart's procedures for dealing with shoplifters. Vetter understood that it would be taken care of "civilly through Wal-Mart and the person rather than going through the police department."

Vetter explained the shirt tag found in his pocket was from a shirt he had bought the day before. He was wearing three or four shirts when he went into Wal-Mart because, he said, "everything I owned was on my back." The list Carrillo found in Vetter's day planner was a shopping list of things he wanted to get with the last of the money he had.

Vetter testified that he went back into Wal-Mart to see why Couch had not come out yet. He took his shopping bags with him to demonstrate to Couch that he was done shopping. He did not steal anything from Wal-Mart; everything in his possession he paid for.

On January 31, 2012, the jury began deliberations and reached a verdict. The jury found Vetter guilty of counts 1 and 2.

At the sentencing hearing on April 11, 2012, the trial court imposed the middle term of two years, plus two additional years for prison priors, for count 1. For count 2, the court imposed 180 days, which it stayed pursuant to section 654. The court ordered Vetter to serve three years of the four-year term in the Kings County Jail, followed by one year of post-release mandatory supervision. Various fines and fees were also imposed. Vetter filed a notice of appeal the same day.

## *DISCUSSION*

### I.     *CALCRIM No. 220*

The People and Vetter both requested jury instructions CALCRIM No. 220 and CALCRIM No. 222. The parties had no objections to the trial court's proposed jury instructions, which included the requested instructions. The court read the instructions to the jury and a copy was given to the jury for deliberations. The jury was given CALCRIM No. 220 as follows:

"220. [¶] The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

The jury was also given CALCRIM No. 222. In part, this instruction read, "You must use only the evidence that was presented in this courtroom. 'Evidence' is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence."

On appeal, Vetter contends that CALCRIM No. 220's definition of reasonable doubt violated his due process right to have his guilt determined beyond a reasonable doubt. He argues that the instruction "you must impartially compare and consider all the evidence that was received through the entire trial" improperly limited the jury's determination of reasonable doubt to the evidence *received* at trial and precluded it from considering the *absence* of evidence. Specifically in this case, there was no surveillance videotape of him reentering Wal-Mart after he went to his truck and smoked a cigarette. The video could have confirmed the prosecution witnesses' testimony that he reentered

9.

the store without the items he had just purchased or, on the contrary, showed that he was carrying two full shopping bags as he claimed.

Our court has considered this claim before. In *People v. Zavala* (2008) 168 Cal.App.4th 772, 780 (*Zavala*), the defendant argued that "CALCRIM No. 220 impermissibly precluded the jury from considering lack of evidence on the issue of proof beyond a reasonable doubt." We rejected the argument, observing that four recent published opinions had also rejected the argument. (*Id*. at pp. 780-781, citing *People v. Garelick* (2008) 161 Cal.App.4th 1107, 1117-1119; *People v. Flores* (2007) 153 Cal.App.4th 1088, 1091-1093; *People v. Westbrooks* (2007) 151 Cal.App.4th 1500, 1508-1510 (*Westbrooks*); *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154, 1156-1157.)

In *Westbrooks*, *supra*, 151 Cal.App.4th at pages 1505-1506, the defendant Westbrooks similarly argued that CALCRIM No. 220 "improperly 'limited the jury's determination of reasonable doubt to the evidence *received* at trial and precluded it from considering the lack of physical evidence tying [him] to the offense ….'" The Court of Appeal concluded that the instruction did not violate Westbrooks's due process rights, explaining:

> "CALCRIM No. 220 … merely instructs the jury that it must consider only the evidence presented at trial in determining whether the People have met their burden of proof. In other words, this instruction informs the jury that the People may not meet their burden of proof based on evidence other than that offered at trial. The instruction does not tell the jury that it may not consider any perceived lack of evidence in determining whether there is a reasonable doubt as to a defendant's guilt. Further, the remainder of the instructions clearly conveyed to the jury the notion that the People had the burden of proving Westbrooks's guilt beyond a reasonable doubt and that the jury was required to determine whether the People had met their burden of proving all of the facts essential to establishing his guilt." (*Westbrooks*, *supra*, 151 Cal.App.4th at p. 1509.)

We agree with the analysis of *Westbrooks*. Vetter acknowledges that the case law is against him, but urges us to reconsider. We are not persuaded either that the cases cited were wrongly decided or that the circumstances of this case call for a different analysis.

10.

Accordingly, we reject Vetter's claim that CALCRIM No. 220 improperly instructed the jury on reasonable doubt. (*Zavala*, *supra*, 168 Cal.App.4th at p. 781.)

## II.     Imposition of middle term for burglary conviction

### A.     Background

The probation officer recommended the upper term of three years for count 1, burglary. The officer took into consideration Vetter's criminal record, his prior unsatisfactory performance on probation, and the fact that he was on probation at the time he committed the current offense. The officer identified no circumstances in mitigation.

At the sentencing hearing, the trial court announced its inclination to impose the upper term for count 1. The court stated that the manner in which the theft was committed indicated "planning and criminal sophistication." The court described the offense as follows:

> "The defendant brought with him a list of items which he then entered the store and purchased to enable him to use those items to steal from the store. He then purchased the items, allowing him to have the receipt to first [cover up] and hide the item[s] of his theft, and secondly, to allow him to recover money for the purchased items by entering in a third time the store with the intent to defraud the store thereby indicating actual three entries, which would have been three separate burglaries, so that he could return the first set of items, retrieve the money for them, and still retain the second set of items that were stolen."

The court also noted that Vetter had numerous prior convictions, the current offense was his sixth offense in eight years, and he was on probation at the time he committed the current offense. Vetter had been granted probation twice and each time he violated probation with new criminal conduct. The only mitigating factor the court found was that the amount of the theft was only about $80. It appeared to the court that this single mitigating factor was heavily outweighed by the aggravating factors.

After stating its tentative ruling, the court invited argument from counsel. Vetter's attorney again pointed out that the amount of the theft was very small; in other circumstances, it would be a petty theft case. He argued that Vetter's criminal record,

11.

while lengthy, did not indicate a predilection for theft or a tendency toward dishonesty. Vetter had drug offenses and the incident "when he was playing with fireworks." The court then observed that the current offense was substantially less serious than the possession of an explosive device, so "obviously the criminal conduct is going down, not escalating." Vetter's attorney reminded the court that Vetter lost all his possessions in a house fire, a circumstance that perhaps made his actions more understandable. The court agreed that Vetter's circumstances "would be mitigating."

The prosecutor recommended the middle term based on the small value of the items stolen.

The court decided to deviate from its tentative ruling, explaining:

"I do think [defense counsel] brought up some mitigating factors I hadn't fully considered in terms of the residential fire making Mr. Vetter homeless, and it would appear to be a theft of largely shoes and clothing, although there was a [planner] and some other items that didn't appear to me to be within that category, and the fact that the criminal conduct does appear to be declining in seriousness as opposed to the previous convictions he's had."

The court imposed the middle term of two years for count 1.

### B.    Analysis

On appeal, Vetter contends the trial court committed reversible error in sentencing Vetter to the middle term because it emphasized an aggravating factor that was not supported by the evidence. In particular, Vetter argues the court's statement that he committed "three separate burglaries" was not supported by any evidence or argument presented at trial.

Section 1170, subdivision (b), provides, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."

We review the trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "The trial court's sentencing discretion must be

exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.] [A] trial court will abuse its discretion … if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision. [Citations.]" (*Ibid.*)

In his opening brief, Vetter discusses case law on residential burglary and urges us not to consider each entry into a commercial building as a separate burglary offense. He also points out that no evidence was presented showing Vetter intended to enter the Wal-Mart a third time in order to return items for money. While we agree with Vetter that any assumption he intended to return the originally purchased items would be speculation, we are not convinced reversible error occurred in this case.

First, we do not read the trial court's statement about "three separate burglaries" as demonstrating that the court relied on a belief that Vetter may have committed three offenses as an aggravating factor. Rather, taken in context, we understand the court simply to be describing a theft that, as it said, required some "planning and criminal sophistication." This was not an impulsive act, but a crime that took some thought and time to execute.

Second, "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) Here, Vetter's attorney did not object to the court's reference to "three separate burglaries," although he was invited to argue his position on sentencing. As a result, this contention has been forfeited.

Third, a trial court's sentencing error does not require reversal and remand if the error does not cause prejudice, "i.e., it is 'not reasonably probable that a more favorable sentence would have been imposed in the absence of the error.'" (*People v. Scott, supra*, 9 Cal.4th at p. 355.) In this case, after hearing from Vetter's counsel, the trial court imposed the middle term for count 1 instead of the upper term, which had been its

tentative ruling. Assuming for the sake of argument that the trial court improperly believed Vetter's conduct constituted three separate burglaries and considered this an aggravating factor, it is not reasonably probable that a more favorable sentence would have been imposed in the absence of the assumed error. Vetter had many prior convictions, spent years in prison, and was on probation at the time he committed the current offense. The probation officer recommended the upper term, but the trial court took into consideration the mitigating factors that Vetter was homeless and stole items he needed to impose the middle term. In light of Vetter's lengthy criminal history and poor performance on probation, we are confident the trial court would still have imposed the middle term in the absence of any improper consideration that Vetter may have intended to commit "three separate burglaries."

Based on the foregoing, we conclude there was no reversible error in the trial court's imposition of a two-year term for count 1, burglary.

## III. *Fees not orally pronounced by trial court*

At the sentencing hearing, the trial court also imposed a restitution fine, a court operations fee, a court facilities funding assessment, and booking and release fees. The court did not mention an assessment of $450 for preparation of a presentence investigation report or an assessment not to exceed $20 per month for the cost of probation services. These assessments, however, appear in the clerk's minute order.[5]

The People concede that, where there is a discrepancy between the oral pronouncement of the sentence and a minute order of the proceedings, the oral pronouncement controls. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385 (*Zackery*).) "The clerk cannot supplement the judgment the court actually pronounced by

---

[5]Somewhat confusingly, these fees are listed on what appears to be the fourth page of a four-page minute order dated April 11, 2012, but at the top right corner, it reads, "Page 2 of 4." The second page of the minute order is designated "Page 2 of 2," and the third page is designated "Page 2 of 3."

adding a provision to the minute order and the abstract of judgment." (*Id*. at pp. 387-388.)

In *Zackery*, *supra*, 147 Cal.App.4th at page 387, the minute order for a sentencing hearing included a number of fines that had not been imposed orally by the trial judge at the hearing. The Court of Appeal struck from the minute order and abstract of judgment all of the fines that had not been announced by the court. (*Id*. at pp. 388-389.) Similarly, in this case, we will direct the trial court to amend the minute order by striking the assessments of (1) $450 for preparation of the presentence investigation report and (2) amount not to exceed $20 per month for the cost of probation services.

The People suggest we remand to the trial court to reconsider whether to impose these assessments. We decline to do so. In *Zackery*, *supra*, 147 Cal.App.4th at page 389, the Court of Appeal remanded the case to the trial court to determine whether to impose two (but not all) of the fines it had struck. The reason for remand with respect to those particular fines was that they were mandatory restitution fines under section 1202.4. (*Id*. at pp. 388-389 [restitution fines must be imposed unless trial court finds compelling and extraordinary reasons not to do so and states those reasons on record].) Here, the assessments for probation costs are not mandatory, so there is no reason to remand for reconsideration.

## IV.    *Ability to pay booking fees*

The trial court imposed a booking fee of $112 and another release fee of $25. Vetter challenges the trial court's imposition of these fees without first determining whether he was able to pay the fees.[6] He admits that he did not raise any objection to the fees with the trial court, but he argues that he has not forfeited the issue.

---

[6]Vetter makes the same argument with respect to the fees for the presentence investigative probation report and for probation services. We have determined that those fees must be deleted from the minute order because the trial court did not orally impose those fees at the sentencing hearing.

15.

After the parties completed their briefing, however, the California Supreme Court decided the forfeiture issue against Vetter. In *People v. McCullough* (2013) 56 Cal.4th 589, 591, the court held, "[A] defendant who fails to contest the booking fee when the court imposes it forfeits the right to challenge it on appeal." Accordingly, Vetter has forfeited this argument.

## V.     *Sentencing enhancement for prior prison term*

On the second day of trial outside the presence of the jury, the court discussed with Vetter his right to remain silent as well as his right to testify. The court explained that if he chose to testify, he could be questioned about his prior felony convictions related to possession of a destructive device, which the court determined were crimes of moral turpitude. At that point, Vetter agreed to "enter into a conditional admission of his prison prior …." The court stated: "As I understood the conversation, everybody is in agreement that while there's four offenses,[7] they constitute a single prison term. In other words, there were four convictions, but the terms were served at the same time, so it constitutes one prison prior." Vetter's attorney and the prosecutor agreed there was only one prior prison term.

At the sentencing hearing, however, the court imposed two, one-year enhancements for prior prison terms, resulting in a total term of four years. The People concede this was an error. Since the parties agreed that Vetter served only one prior prison term,[8] he was subject to only one sentencing enhancement under section 667.5, subdivision (b). Consequently, we will strike one of the two, one-year sentencing enhancements.

---

[7]In addition to the two convictions related to possession of a destructive device, the information alleged that Vetter had two convictions for drug-related offenses, for a total of four convictions.

[8]We also observe that the information alleged only "a term was served" for Vetter's prior convictions.

16.

The correct term is three years—the middle term of two years plus one year for one prior prison term. The trial court, in its discretion, may commit Vetter to county jail for the full term or "suspend execution of a concluding portion of the term selected," during which time Vetter would be under mandatory supervision. (§ 1170, subd. (h)(5)(B)(i).) We will remand the case to allow the court to exercise its discretion on this matter.

## VI.     *Ineffective assistance of counsel claim*

Finally, Vetter argues he was denied effective assistance of counsel based on various omissions by defense counsel. He complains that his attorney (1) failed to object to the court's characterization of his conduct as indicating "three separate burglaries," (2) failed to object to the imposition of fines and fees without a determination of Vetter's ability to pay, and (3) failed to request a limiting instruction with respect to the evidence that Vetter had prior felony convictions.

To prevail on an ineffective assistance of counsel claim, Vetter must show both that his attorney's performance was deficient and that the deficiency caused him prejudice. (*People v. Cowan* (2010) 50 Cal.4th 401, 493, fn. 31.) When the reasons for an attorney's decisions are not apparent from the record, "'we will not assume inadequacy of representation unless counsel had no conceivable tactical purpose.' [Citation.]" (*People v. Hines* (1997) 15 Cal.4th 997, 1064.)

Vetter's claim that his attorney should have objected to the court's statement regarding "three separate burglaries" fails for lack of prejudice. As discussed above, we have concluded that it is not reasonably probable a more favorable sentence would have been imposed absent the consideration of "three separate burglaries." Therefore, defense counsel's failure to object at the sentencing hearing did not prejudice Vetter.

With respect to the claim that Vetter's attorney should have objected to the imposition of fees without a determination of ability to pay, the record does not disclose why his attorney did not object. For example, it may be that his attorney knew Vetter, in fact, had the ability to pay. On this record, we cannot say the failure to object constituted

17.

inadequate representation. (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-277 [where record sheds no light on why counsel acted in manner challenged, claim of ineffective assistance of counsel should be denied on direct appeal; claim is generally more appropriately litigated in habeas corpus proceeding].) Further, the probation officer's report noted that Vetter's physical and mental health were good, and he worked as a contractor, although he had not been able to find work "due to the economic climate." The fees Vetter now challenges amount to $137. Since he is physically able to work, it is not reasonably probable that the trial court would have found him unable to pay $137 if his attorney had objected and raised the issue of ability to pay. In other words, Vetter has not demonstrated prejudice.

Finally, we consider defense counsel's failure to request a limiting instruction regarding Vetter's prior felony convictions. Vetter points out that, before he entered his conditional admission of two prior convictions related to possession of a destructive device, his attorney indicated his belief that a limiting instruction would be given. Vetter's attorney said, "The jury instructions, I believe, will instruct that you take the fact of those felony convictions only to judge your veracity or your truthfulness and not to judge whether or not you were more likely than not to have committed a new crime just because you were convicted before." No limiting instruction was given to the jury, however, which appears to have been an oversight on the part of both parties.

During his closing argument, Vetter's attorney referred to Vetter's convictions for "incidents involving explosives," noting that he had done his time, paid his debt to society, and "successfully fulfilled his parole …." He then told the jury: "I believe the jury instructions will tell you you can use the fact of that conviction to decide whether or not Mr. Vetter is telling the truth, but you can't use it to decide he is more likely to have committed this crime just because he was previously convicted of a felony. I mean, it doesn't necessarily make him a bad person and more likely to commit a crime because he's been convicted before, but you can use that to judge his credibility."

In his rebuttal argument, the prosecutor argued that Vetter had a motive to lie but also suggested that prior convictions were not a proper reason to find him guilty of the current charges. He said: "Who does have the motive to lie here? Mr. Vetter. He is the one trying to avoid a conviction. He's been convicted before. He's been to prison. *I don't hold that against him and I hope that you won't either.* But he's been locked up. He does not want to be locked up again." (Italics added.)

The People argue that, despite absence of a limiting instruction from the court, the record does not lend itself to a reasonable probability that the jury misused evidence of Vetter's criminal record to find him guilty. We agree. The jury learned that Vetter had been convicted of possession of a destructive device and possession of materials with the intent to make an explosive or destructive device. Vetter explained that he had an interest in fireworks and his "hobby" resulted in an explosion that damaged his hand. These crimes were not particularly likely to inflame the jury, nor were they similar to the crimes he was on trial for, namely, burglary and theft. The evidence against Vetter was strong. Two loss-prevention agents testified that they observed Vetter steal from Wal-Mart. A police officer testified that Vetter's girlfriend had Wal-Mart merchandise in her purse, and she said Vetter put it there. Under these circumstances, we do not believe Vetter's prior convictions, which had nothing to do with theft or dishonesty, would have been used improperly by the jury to convict him. Stated differently, we conclude it is not reasonably probable that the jury would have reached a more favorable result had a limiting instruction been given. Again, Vetter's claim of ineffective assistance of counsel fails for lack of prejudice.

## ***DISPOSITION***

The judgment is modified to strike one sentencing enhancement under section 667.5, subdivision (b). As modified, the judgment is affirmed.

The trial court is directed to prepare an amended minute order for April 11, 2012, deleting the assessments of $450 for preparation of the presentence investigation report and an amount not to exceed $20 per month for the cost of probation services.

The case is remanded to the trial court for consideration of how the three-year term should be served pursuant to section 1170, subdivision (h)(5). The trial court will prepare an amended abstract of judgment in accordance with this opinion and forward it to appropriate prison authorities.

_____

Hoff, J.*

WE CONCUR:

_____

Cornell, Acting P.J.

_____

Detjen, J.

---

*Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.