[No. F050057. Fifth Dist. June 7, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN JOSÉ HERNÁNDEZ RÍOS, Defendant and Appellant.

COUNSEL

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, John G. McLean and George M. Hendrickson, Deputy Attorneys General for Plaintiff and Respondent.

## OPINION

**GOMES, J.**—A bar fight began with fisticuffs, escalated to broken beer bottles, and ended in Jesús Patiño's bloody death from a severed jugular vein. A jury found Juan José Hernández Ríos guilty of voluntary manslaughter with personal use of a deadly weapon. (Pen. Code, §§ 187, subd. (a), 192, subd. (a), 12022, subd. (b)(1).)[1] The court sentenced him to an aggregate seven-year sentence (a six-year middle term for voluntary manslaughter and a consecutive one-year term for personal use of a deadly weapon). (§§ 193, subd. (a), 12022, subd. (b)(1).)

### ISSUES ON APPEAL

On appeal, Ríos challenges three Judicial Council of California Criminal Jury Instructions (2006–2007) (CALCRIM). First, he argues that language

---

[1] All statutory references are to the Penal Code unless otherwise noted.

in CALCRIM No. 220 absent from analogous CALJIC No. 2.90 requiring the jury "to compare and consider all the evidence" impermissibly shifts the burden of proof to the defense by allowing the jury to hold against the defense the absence of defense evidence. Second, he argues that language in CALCRIM No. 372 absent from analogous CALJIC No. 2.52 allowing the jury to infer from his flight after the crime that he was "aware of his guilt" impermissibly presumes the existence of his guilt and lowers the prosecution's burden of proof. Third, he argues that language in CALCRIM No. 3471 absent from analogous CALJIC No. 5.56 allowing the use of deadly force in self-defense without withdrawing from the fight only if "the defendant started the fight using nondeadly force" violates his rights to due process, confrontation, and proof beyond a reasonable doubt. We will affirm the judgment.

## DISCUSSION

### 1. *CALCRIM No. 220*

Ríos argues that language in CALCRIM No. 220 absent from analogous CALJIC No. 2.90 requiring the jury "to compare and consider all the evidence" impermissibly shifts the burden of proof to the defense by allowing the jury to hold against the defense the absence of defense evidence. The Attorney General argues the contrary.

After all of the prosecution's witnesses testified, the court responded to a juror's question by "advising you may only consider the evidence that's already been received in this case," at which point the prosecution rested and, immediately afterward, the defense rested without presenting any evidence. After instructing with CALCRIM No. 222 to "decide what the facts are in this case" and "to decide what happened based only on the evidence that has been presented to you in this trial," the court instructed Ríos's jury with CALCRIM No. 220:

"The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime or brought to trial. A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove each element of a crime and any special allegation beyond a reasonable doubt.

"Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially *compare and consider all the evidence that was received throughout the entire trial.* Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal. You must find him not guilty." (Italics added.)

With reference to the italicized portion of CALCRIM No. 220, CALJIC No. 2.90 imparts essentially the same mandate to the jury:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether [his] [her] guilt is satisfactorily shown, [he] [she] is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving [him] [her] guilty beyond a reasonable doubt.

"Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after *the entire comparison and consideration of all the evidence,* leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge." (CALJIC No. 2.90, italics added.)

■ CALCRIM No. 220 uses *verbs* requiring the jury to "compare and consider all the evidence that was received throughout the entire trial." CALJIC No. 2.90 uses *nouns* requiring "the entire comparison and consideration of all the evidence" by the jury. Ríos fails to persuade us that those grammatical differences are material. The United States Supreme Court rejected a constitutional challenge to CALJIC No. 2.90 in part on the rationale that "the entire comparison and consideration of all the evidence" language "explicitly told the jurors that their conclusion had to be based on the evidence in the case." (*Victor v. Nebraska* (1994) 511 U.S. 1, 16 [127 L.Ed.2d 583, 114 S.Ct. 1239].) The language Ríos challenges in CALCRIM No. 220 did just that. The standard of review in an appellate challenge to an instruction on the ground of ambiguity is whether there is a reasonable likelihood that the jury applied the instruction in a way that denied fundamental fairness. (See *Estelle v. McGuire* (1991) 502 U.S. 62, 72–73 [116 L.Ed.2d 385, 112 S.Ct. 475]; *People v. Clair* (1992) 2 Cal.4th 629, 663 [7 Cal.Rptr.2d 564, 828 P.2d 705].) By that standard, Ríos's argument that "CALCRIM No. 220 shifted the burden to him to prove the existence of reasonable doubt" is meritless.

### 2. *CALCRIM No. 372*

Ríos argues that language in CALCRIM No. 372 absent from analogous CALJIC No. 2.52 allowing the jury to infer from his flight after the crime

that he was "aware of his guilt" impermissibly presumes the existence of his guilt and lowers the prosecution's burden of proof. The Attorney General argues the contrary.

The court instructed Ríos's jury with CALCRIM No. 372: "If the defendant fled immediately after the crime was committed, that conduct may show that he was *aware of his guilt*. If you conclude that the defendant fled, it is up to you to decide the meaning and important of that conduct. However, evidence that the defendant fled cannot prove guilt by itself." (Italics added.)

Arguing that the "culprit" in CALCRIM No. 372 is the word "aware," Ríos contrasts CALCRIM No. 372 (which uses that word) with CALJIC No. 2.52 (which does not) and claims that the latter instruction "left open the question whether the defendant was guilty by instructing that the defendant's flight could be considered as *evidence of guilt*" but "not as *evidence of his awareness of his guilt*" (italics added): "The [flight] [attempted flight] [escape] [attempted escape] [from custody] of a person [immediately] after the commission of a crime, or after [he] [she] is accused of a crime, is not sufficient in itself to establish [his] [her] guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide." (CALJIC No. 2.52.)

On whether a flight instruction permitting a jury to infer "awareness of guilt" is constitutional, the California Supreme Court's rejection of an analogous challenge to CALJIC No. 2.52 is instructive. In *People v. Mendoza* (2000) 24 Cal.4th 130 [99 Cal.Rptr.2d 485, 6 P.3d 150] (*Mendoza*), the defense argued that "the instruction creates an unconstitutional permissive inference because it cannot be said with ' "substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." ' " (*Id.* at p. 179.) Noting that a permissive inference violates due process "only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury," *Mendoza* held that permitting "a jury to infer, if it so chooses, that the flight of a defendant immediately after the commission of a crime indicates a *consciousness of guilt*" is not violative of due process. (*Id.* at p. 180, italics added.)

Our short etymological analysis of Ríos's argument begins with a dictionary definition of the word "aware": "Having knowledge or cognizance." (American Heritage Dict. (4th ed. 2000) p. 125.) In reliance on the dictionary's list of synonyms that include the word "aware," Ríos argues that the word "implies knowledge gained through one's own perceptions or by means of information." (Italics omitted; see *ibid.*) "Conscious," another

word on the list, "emphasizes the recognition of something sensed or felt" (*id.*, at p. 125, italics omitted), which, of course, focuses on the acquisition of knowledge not by "information" but by "perceptions." (*Ibid.*) Since the dictionary defines "consciousness" as "[s]pecial awareness or sensitivity: class consciousness; race consciousness" (*id.* at p. 391, italics omitted), ipso facto the special awareness that *Mendoza* allows a jury to infer from a flight instruction is "guilt consciousness" (in the syntax of the dictionary) or "consciousness of guilt" (in the syntax of the California Supreme Court). (Compare American Heritage Dict., *supra,* at p. 391 (italics omitted) with *Mendoza, supra,* 24 Cal.4th at p. 180.) As the inference in *Mendoza* passes constitutional muster, so does the inference here.

On whether a flight instruction impermissibly lowers the prosecution's burden of proof, the California Supreme Court's rejection of another challenge to CALJIC No. 2.52 likewise is instructive. In *People v. Navarette* (2003) 30 Cal.4th 458 [133 Cal.Rptr.2d 89, 66 P.3d 1182] (*Navarette*), the defense argued that there might be "reasons for flight other than consciousness of guilt," that there might be flight "on account of a minor crime [the defendant] *did* commit, though he had no connection with a more serious crime he *did not* commit," and that there might be lack of "consciousness of guilt" even if the defendant was guilty, so "the court should have instructed the jury not to consider evidence of flight unless it first concluded defendant was in fact fleeing." (*Id.* at p. 502.) "The purpose of presenting evidence of flight is to establish consciousness of guilt," the court wrote, "but defendant argues the jury should first have found that defendant had a guilty conscience before considering the evidence of flight." (*Ibid.*) *Navarette* summarily rejected that argument: "Defendant's theory turns the instruction on its head." (*Ibid.*)

By parity of reasoning to both *Mendoza* and *Navarette,* we reject Ríos's arguments that CALCRIM No. 372 impermissibly presumes the existence of his guilt and lowers the prosecution's burden of proof.

### 3. *CALCRIM No. 3471*

Ríos argues that language in CALCRIM No. 3471 absent from analogous CALJIC No. 5.56 allowing the use of deadly force in self-defense without withdrawal from the fight if "the defendant started the fight using nondeadly force" violates his rights to due process, confrontation, and proof beyond a reasonable doubt. The Attorney General argues the contrary.

The court instructed Ríos's jury with CALCRIM No. 3471:

"A person who engages in mutual combat, or who is the first to use physical force has a right to self-defense only if, one, he actually and in good

faith tries to stop fighting; and two, he indicates by whatever conduct to his opponent in a way that a reasonable person would understand that he wants to stop fighting and that he has stopped fighting; and three, he gives his opponent a chance to stop fighting. If a person meets these requirements, he then has a right to self-defense if the opponent continues to fight.

*"If you decide that the defendant started the fight using nondeadly force,* and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting." (Italics added.)

Ríos argues that a reasonable interpretation of the first clause in the last paragraph of CALCRIM No. 3471 is "that he may use deadly force only if he started the fight and did so with nondeadly force." He argues that the instruction differs from the last paragraph of CALJIC No. 5.56 "by appearing to add a requirement that the defendant have started the fight in order for the principle to apply":

"The right of self-defense is only available to a person who engages in mutual combat:

"[[1.] If [he] [she] has done all the following:

"A [He] [She] has actually tried, in good faith, to refuse to continue fighting;

"B [He] [She] has by words or conduct caused [his] [her] opponent to be aware, as a reasonable person, that [he] [she] wants to stop fighting; and

"C [He] [She] has caused by words or conduct [his] [her] opponent to be aware, as a reasonable person, that [he] [she] has stopped fighting; and

"D [He] [She] has given [his] [her] opponent the opportunity to stop fighting."

"E After [he] [she] has done these four things, [he] [she] has the right to self-defense if [his] [her] opponent continues to fight[.]] [, or]

"[[2.] *[If the other party to the mutual combat responds in a sudden and deadly counterassault, that is, force that is excessive under the circumstance, the party victimized by the sudden excessive force need not attempt to withdraw and may use reasonably necessary force in self-defense.]"* (CALJIC No. 5.56, italics added.)

On the premise that his "defense hinged on the principle conveyed by the last paragraph of CALCRIM No. 3471," Ríos argues that he was deprived of the defense of self-defense by that "ambiguous" paragraph. He argues that he "did not indicate his intention to withdraw from the fight, but used deadly force after Patiño used deadly force first by throwing a bottle at him." The Attorney General argues that, even if credible, the evidence on which Ríos relies "would unquestionably show that the victim no longer presented a threat of death or great bodily injury."

The record refutes Ríos's argument and corroborates the Attorney General's. The sole evidentiary basis of the theory of self-defense that Ríos's attorney argued to the jury was the testimony of Rosa Alcárez, who along with her boyfriend Fructoso Mercado went to the bar with Ríos on the night of the homicide. Alcárez testified that Patiño, who had not fought with Ríos earlier, threw an intact bottle at him, hitting him in the shoulder, and that Ríos reached down and picked up the bottle, which had broken, and, using a single overhand right cross punch, hit Patiño in the cheek and neck area with the bottle. No evidence showed, or even intimated, that, after throwing the bottle at Ríos, Patiño had access to, let alone used, another bottle or used "sudden and deadly force" against Ríos in any other way. A homicide detective impeached Alcárez's testimony with her pretrial statement that the bottle Patiño threw at Ríos did not even hit him.

None of the other evidence about the fatal conflict between Patiño and Ríos even intimated a possible defense of self-defense. Mercado testified that Ríos fought with Patiño inside the bar, that both men had bottles in their hands, that Ríos broke the bottle in his hand against a door, and that both men kept fighting with each other outside the bar. Hilario Hernández testified that from inside Mercado's car she saw Ríos's "hand closed" on Patiño's stomach. Bartender Sara Soto testified that from behind the bar she saw Patiño leave the bar, saw Ríos break a bottle against the bar, and saw Ríos leave the bar.

So the paragraph of CALCRIM No. 3471 to which Ríos objects is simply irrelevant here. Whether or not Ríos started the fight with Patiño, there is no substantial evidence in the record that Patiño's throwing a beer bottle at him, whether the bottle hit him in the shoulder or missed him altogether, constituted "such sudden and deadly force" that Ríos could not withdraw from the fight. By finding him guilty of voluntary manslaughter, the jury rejected his insubstantial defense of self-defense. His attorney accurately argued at sentencing that his crime was "voluntary manslaughter in perhaps its purest form, the heat of passion kind of voluntary manslaughter." Instruction on self-defense with CALCRIM No. 3471 simply reflected an abundance of

caution by the court. (See § 197; cf. *People v. Stitely* (2005) 35 Cal.4th 514, 550–552 [26 Cal.Rptr.3d 1, 108 P.3d 182].) His ·CALCRIM No. 3471 argument is meritless.[2]

## DISPOSITION

The judgment is affirmed.

Vartabedian, Acting P. J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 12, 2007, S154435.

---

[2] In light of our holding, we intimate no opinion about whether the first clause in the last paragraph of CALCRIM No. 3471 states the law correctly.·