Filed 4/21/14  P. v. Spencer CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057547 |
| v. | (Super.Ct.No. FSB1201230) |
| BENARD JEROME SPENCER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  A. Rex Victor, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Kristine Gutierrez and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant Bernard Jerome Spencer of one count of assault by means likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)). The trial court found true that defendant had two prior serious or violent felony convictions resulting in prison sentences. (§ 667.5(b).) The trial court initially sentenced defendant to an indeterminate term of 25 years to life in prison, plus two one-year prison term enhancements pursuant to section 667.5, subdivision (b). In addition to his prison term, the court ordered defendant to pay a restitution fine in the amount of $10,000 under section 1202.4, subdivision (b)(1).

During the briefing of this appeal, pursuant to the resentencing provisions of section 1170.126, the trial court vacated defendant's indeterminate sentence and resentenced him to a new total determinate term of 10 years, including an upper term of eight years for the assault, plus the two one-year prison term enhancements pursuant to section 667.5, subdivision (b).[2]

Defendant raises three separate issues on appeal: (1) whether the trial court abused its discretion by admitting certain photographs of the victim's injuries; (2) whether an instruction given to the jury, CALCRIM No. 372 (Defendant's Flight), allows an unconstitutional permissive inference of guilt; and (3) whether the restitution

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

[2] By order dated January 10, 2014, this court construed defendant's request for judicial notice of the trial court's minutes of his resentencing as a motion to augment, and granted the motion, deeming the minutes to be part of the record on appeal.

fine of $10,000 was properly imposed.[3]  For the reasons stated below, the judgment will be affirmed.

## I  FACTUAL BACKGROUND

About 10:30 p.m. on March 19, 2012, defendant became angry with his girlfriend, the victim in this case, because another man had given her and her son (then four years old) a ride home.  Victim attempted to walk away from defendant, whom she described as "furious," but he followed her into the kitchen of their house, where he punched her in the head, on her temple, knocking her into a wall and then to the ground.  She was "dazed," but got up, and again tried to walk away, first into the bedroom and then the bathroom.

Defendant followed, and in the bathroom punched victim again, causing her to fall into the bathtub.  While victim was in the bathtub, he hit her with a closed fist several more times to the head.  When she tried to get him to stop hitting her by telling him that she might be pregnant with his child, he punched her in the abdomen, knocking her wind out.

When victim stood up from the bathtub, defendant grabbed her by the hair.  Victim tried to escape back out into the bedroom, but defendant caught her there, grabbed her by the neck, put her in a headlock, and choked her.  Defendant punched victim again,

---

[3]  Two further issues raised by appellant in his opening brief—whether he was entitled to resentencing under Proposition 36, the "Three Strikes Reform Act of 2012," and his appeal of the trial court's denial of his motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 to dismiss a previous "strike" conviction—have been rendered moot by defendant's resentencing.  These issues, therefore, will not be further discussed.

this time in the mouth, loosening several teeth.  Defendant then walked away from victim momentarily, and victim took the opportunity to run to her daughter's bedroom to try to escape out the window.  Defendant chased her, grabbing her by the pants as she exited the window; her pants tore away, and she was able to get out the window, wearing a shirt, but no clothing below the waist.

Victim ran to a neighbor's house across the street, screaming for help.  Defendant jumped over the neighbor's gate, but defendant caught up to her before she reached the door, and she fell on the grass; as she lay in front of the neighbor's house, defendant kicked victim between the legs.  In response to victim's cries for help, a neighbor came out of his house carrying a baseball bat.  The neighbor observed defendant dragging victim away into a nearby vacant lot.  When the neighbor reached his front gate, defendant ran away.

The neighbor testified that when he reached victim, she was "bleeding everywhere," and her eyes were swollen shut.  The paramedic who arrived soon after also testified that victim was bleeding from the mouth and nose, estimating that she had lost about 20 cubic centimeters of blood, and observed that she had swelling on her face.  Victim complained to the paramedic of pain in her abdomen and chest, as well as her back.  The paramedic was concerned that victim might have serious injuries because she had obviously suffered blows to the head, and her blood pressure was high, possibly indicating a buildup of intracranial pressure.  As a precautionary measure, consistent with protocol for any patient complaining of neck or back pain, the paramedic placed victim in

a neck brace or "cervical collar," and strapped her to a "cervical spine board" for transportation to the hospital.

Victim developed two black eyes but suffered no broken bones and did not require stitches for her lacerations.

## II  ANALYSIS

**A.  The Trial Court Did Not Abuse Its Discretion by Admitting Photographs Showing Victim in a Neck Brace and Lying on a Cervical Spine Board**

At trial, several photographs of victim's injuries—taken while she still wore the cervical collar placed on her by the paramedic and while she remained strapped to the cervical spine board—were introduced into evidence over the defense's objection.  The defense moved to edit the photographs by cropping the portion showing the cervical collar and the cervical spine board.  The trial court overruled the objection and allowed the photographs to be introduced unedited.  Defendant contends that the trial court abused its discretion by admitting the photographs in their unedited form, arguing that they should have been cropped to omit any depiction of the cervical collar and cervical spine board, or excluded altogether.  We disagree.

The trial court has broad discretion in ruling on the admissibility of photographic evidence under Evidence Code section 352, and on appeal we review such rulings only for abuse of discretion.  (*People v. Minifie* (1996) 13 Cal.4th 1055, 1070.)  "'A trial court's decision to admit photographs under Evidence Code section 352 will be upheld on appeal unless the prejudicial effect of such photographs clearly outweighs their probative value.'  [Citation.]"  (*People v. Roldan* (2005) 35 Cal.4th 646, 712-713

5

(*Roldan*).) Prejudice in this context is "not the prejudice or damage to a defense that naturally flows" from probative evidence, but rather evidence that "uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues." (*People v. Karis* (1988) 46 Cal.3d 612, 638 (*Karis*).) Even assuming an abuse of discretion, the judgment will not be reversed unless it is reasonably probable that a result more favorable to defendant would have resulted absent the error. (*People v. Cole* (2004) 33 Cal.4th 1158, 1195 (*Cole*).)

The prejudicial effect of the unedited photographs does not clearly outweigh their probative value. (See *Roldan*, *supra*, 35 Cal.4th at pp. 712-713.) The photographs are not especially inflammatory, compared to the photographs as defendant would have had them edited: if anything in the photographs would tend to evoke an emotional bias against defendant, it is victim's visible injuries, which defendant did not propose should be edited out. (See *Karis*, *supra*, 46 Cal.3d at p. 638.) Nor are the photographs misleading: they accurately depict victim's condition when they were taken, just after she arrived at the hospital, and immediately following the beating she suffered at the hands of defendant. The cervical collar victim wore and cervical spine board to which she was strapped were not props in a staged photograph, but rather were necessitated by her medical condition at the time, as evaluated by the paramedic who initially treated her. The jury was informed that the devices were precautionary measures, and that it turned out victim did not in fact suffer severe neck or back injuries. As such, we find no abuse of discretion in admitting the photographs.

The authority defendant cites in support of his argument that the trial court abused its discretion by declining to order the pictures to be edited or excluded is unpersuasive. Case law regarding autopsy pictures of murder victims is distinguishable, to say the least. As noted, the photographs at issue are not particularly gruesome or graphic, and indeed the most gruesome aspect of them—victim's injuries—are in the portions defendant did not ask the trial court to crop out. Nor were the photographs misleading, in the context of testimony describing the extent of victim's injuries as they were later diagnosed, and explaining that the cervical collar and cervical spinal board were precautionary measures.

In any case, even if the admission of the photographs had been an abuse of discretion, the error would not require reversal. If the photographs were disregarded, there would still be more than enough evidence to support defendant's conviction. The testimony of the victim herself, describing the extended and brutal nature of defendant's attack, is compelling evidence that defendant used force that was likely to produce great bodily injury to a person, even though victim was lucky enough to escape with lesser injuries. It is highly doubtful the incremental effect of the photographs as shown to the jury, as opposed to the photographs as defendant proposed they should be edited, made any difference in the result. Accordingly, it is not reasonably probable that a result more favorable to defendant would have resulted had the trial court sustained defendant's objection to the photographs. (See *Cole*, *supra*, 33 Cal.4th at p. 1195.)

## B.  CALCRIM No. 372 Is Constitutional

Defendant challenges the constitutionality of an instruction given to the jury, CALCRIM No. 372, which addresses the inference the jury may make if it finds the

7

defendant fled from the scene of crime.[4]  He argues that it violates his due process rights to permit the jury to infer from his flight from the scene of the crime that he was aware of his guilt.  We find no constitutional defect in the instruction.

To comport with due process requirements of the federal Constitution (U.S. Const., 5th & 14th Amends.) there must be "a relationship between the permissively inferred fact and the proven fact on which it depends."  (*People v. Mendoza* (2000) 24 Cal.4th 130, 180 (*Mendoza*).)  "'A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.  [Citation.]'"  (*Ibid.*)

Defendant's contention on appeal is that "guilt is not a logical, reasonable inference from the mere fact of the defendant having fled from the scene of a crime," so the instruction violates his due process rights.  The People argue defendant forfeited this argument by not raising it in the trial court.  We disagree.  The asserted instructional error is reviewable on appeal to the extent it affects defendant's "substantial rights," even though no objection to the instruction was made at trial.  (§ 1259; see *People v. Lindberg* (2008) 45 Cal.4th 1, 34, fn. 11 [argument that instruction given at trial was constitutionally infirm not forfeited for failure to raise the objection at trial].)

---

[4]  The version of CALCRIM No. 372 given to the jury stated:  "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled cannot prove guilt by itself."

Nevertheless, we reject defendant's contention on the merits. The California Supreme Court in *Mendoza* upheld the constitutionality of a similar instruction, CALJIC No. 2.52.[5] (*Mendoza*, *supra*, 24 Cal.4th at pp. 179-181.) The court in *Mendoza* concluded that an instruction permitting "a jury to infer, if it chooses, that the flight of a defendant immediately after the commission of a crime indicates a consciousness of guilt" does not violate due process, because the suggested conclusion is justified by reason and common sense. (*Id*. at p. 180.) The same reasoning and conclusion apply equally here.

Defendant argues that *Mendoza* does not apply here because CALJIC No. 2.52 and CALCRIM No. 372 are substantially different. He reasons that CALCRIM No. 372 permits an inference regarding the defendant's "aware[ness] of his guilt," whereas, CALJIC No. 2.52 permits an inference regarding the defendant's "consciousness of guilt."[6] He insists that "awareness" and "consciousness" are not equivalent in this context, interpreting CALCRIM No. 372's language, "aware of his guilt," to suggest "a specific awareness of his guilt in a particular matter," as distinguished from CALJIC No. 2.52's "vague, generalized consciousness of guilt, akin to a guilty conscience, without

**5** The version of CALJIC No. 2.52 (1979 rev.) at issue in *Mendoza* stated: "'The flight of a person immediately after the commission of a crime, or after he is accused of the crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.'" (*Mendoza*, *supra*, 24 Cal.4th at p. 179.)

**6** The phrase "consciousness of guilt" does not appear in CALJIC No. 2.52, but rather comes from the *Mendoza* court's gloss of the instruction, quoted above. (See *Mendoza*, *supra*, 24 Cal.4th at p. 180.)

having a specific awareness of his guilt in a particular matter." We are not persuaded. As defendant acknowledges, in *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154, 1159, the appellate court rejected the exact same argument and found CALCRIM No. 372 to pass constitutional muster. We agree with the reasoning and conclusion of *Hernandez Rios*: "awareness of guilt" and "consciousness of guilt" are synonymous in this context, and CALCRIM No. 372 is constitutional.

Here, in any event, any error would have been harmless. As defendant concedes in his briefing on appeal, the evidence at trial that defendant assaulted victim was "considerable"; the "key question" was whether the amount of force defendant used was likely to cause great bodily injury. It does not follow from an inference regarding defendant's awareness of his guilt that the amount of force used in his assault on victim was of any particular magnitude. That element of defendant's offense was established by other compelling evidence, including and especially the victim's own testimony regarding the assault. Accordingly, it is not reasonably probable that a result more favorable to defendant would have resulted had a different instruction on defendant's flight been given. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) For the same reasons, any error was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24.)

## C. The Restitution Fine Was Properly Imposed

As noted, the trial court ordered defendant to pay a restitution fine of $10,000 pursuant to section 1202.4, subdivision (b)(1). Defendant contends that this order violates his rights under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its

10

progeny, because the fine is based on facts found by the trial court, rather than facts reflected in the jury's verdict. We find no such error.

In *Apprendi*, the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.) "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (*Blakely v. Washington* (2004) 542 U.S. 296, 303, italics omitted.) "[T]he rule of *Apprendi* applies to the imposition of criminal fines." (*Southern Union Co. v. United States* (2012) 567 U.S. __, __ [132 S.Ct. 2344, 2357, 183 L.Ed.2d 318].) However, "nothing in [the common law and constitutional history] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to the offense and offender—in imposing a judgment *within the range* prescribed by statute." (*Apprendi*, *supra*, at p. 481; see also *People v. Kramis* (2012) 209 Cal.App.4th 346, 351 (*Kramis*) [finding *Apprendi* does not prohibit court from imposing $10,000 restitution fine under section 1202.4, subd. (b)(1)].)

Under section 1202.4, the trial court was required to impose a restitution fine in an amount between $240 and $10,000 on any person convicted of a felony. (§ 1202.4, subd.

(b)(1).[7]) The trial court here imposed a fine at the top end of that range. Because the court exercised its discretion within the range authorized by statute on the basis of facts reflected in the jury's verdict—namely, that defendant was convicted of a felony—the fine is entirely proper under *Apprendi* and its progeny. (See *Kramis*, *supra*, 209 Cal.App.4th at p. 351.

Defendant construes section 1202.4 to set a statutory *maximum* of $240, unless there are additional factual findings regarding the defendant's ability to pay and other factors, which must be found by the jury to comport with the rule stated in *Apprendi*. Not so. Section 1202.4 contemplates an exercise of discretion by the judge regarding factors relating to the offense and the offender in setting a fine within the prescribed range —in this case, between the statutory minimum of $240 and the statutory maximum of $10,000—as explicitly permitted by *Apprendi*. (See *Apprendi*, *supra*, 530 U.S. at p. 481.) Defendant's reading of section 1202.4 is contrary to the plain language of the statute. (See § 1202.4, subds. (c) & (d) [describing factors the court either may or must take into account in setting a fine "in excess of the minimum fine"].) It is also incompatible with prior appellate authority, which has rejected the claim that *Apprendi* and its progeny had any effect on the trial court's discretion to select a fine within the

---

[7] Section 1202.4, subdivision (b)(1) was amended effective January 1, 2012, changing the monetary ranges of the restitution fine over the next two years. (Stats. 2011, ch. 358, § 1.) As relevant here, the statutory minimum restitution fine for a felony conviction for an offense committed between January 1, 2012 and January 1, 2013 was raised from $200 to $240; the statutory maximum of $10,000 was not changed. (*Ibid.*)

range prescribed by section 1202.4, subdivision (b)(1), up to the statutory maximum of $10,000.  (See *Kramis*, *supra*, 209 Cal.App.4th at p. 351.)

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>            HOLLENHORST            </u>
                                                          J.

We concur:

<u>         RAMIREZ                  </u>
                        P.J.

<u>         CODRINGTON            </u>
                        J.

13