Filed 12/9/14  P. v. Valine CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075411 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F08213) |
| v. | |
| DANIEL JOSEPH VALINE, | |
| Defendant and Appellant. | |

Victim Kelly McClurg was fatally shot at his house, twice in the face and once in the chest over a dispute about stolen marijuana.  Present at the shooting were defendant Daniel Joseph Valine, defendant's son Justin Valine, and Kailan James, who was the boyfriend of defendant's daughter.  The question at trial was who pulled the trigger -- defendant or James.

The son testified at trial to the following:  defendant was the shooter; defendant emerged from the victim's house carrying a shotgun and James emerged carrying

1

marijuana plants; and defendant fled the scene in a car (in which the son and James were the passengers).

Police recorded a conversation between defendant, the son, and a sergeant. Defendant said he was at the victim's house when the shots went off "in front of [him]." James fired the shots. Defendant grabbed the shotgun from James. The son saw defendant grab the shotgun from James. Defendant fled right afterward.

The People charged defendant with the victim's first degree malice murder, and the jury found him guilty of second degree murder.

Defendant appeals, raising three contentions: (1) the testimony of his accomplice son was not sufficiently corroborated; (2) the court abused its discretion in admitting five inflammatory photographs of the victim's body; and (3) the consciousness of guilt instructions allowed the jury to draw irrational inferences of his guilt. We disagree and affirm.

## DISCUSSION

## I

### *The Testimony Of The Accomplice Son Was Sufficiently Corroborated*

Defendant contends the testimony of his accomplice son was not sufficiently corroborated. The son testified it was defendant who fatally shot the victim. We disagree because the corroborating evidence placed defendant at the scene of the crime, put the murder weapon in his hands moments after the shooting, and showed he fled the scene.

"A conviction can be based on an accomplice's testimony only if other evidence tending to connect the defendant with the commission of the offense corroborates that testimony. ([Pen. Code,] § 1111.) The corroborating evidence may be circumstantial or slight and entitled to little consideration when standing alone, and it must tend to implicate the defendant by relating to an act that is an element of the crime. The corroborating evidence need not by itself establish every element of the crime, but it

2

must, without aid from the accomplice's testimony, tend to connect the defendant with the crime." (*People v. McDermott* (2002) 28 Cal.4th 946, 985-986.)

The corroborating evidence, which came from defendant himself, showed the following three facts. One, defendant admitted he was in the victim's house when the shots went off "in front of [him]." Two, defendant admitted he "grabbed a-hold of [the gun.]" And three, defendant admitted he fled right after the shooting, i.e., "I went straight out to the car. I was in that fuckin' car so fast." This evidence corroborated the accomplice son's testimony that it was defendant who fatally shot the victim. (See *People v. Barillas* (1996) 49 Cal.App.4th 1012, 1021 [evidence that the defendant was where the shooting took place, only a short distance from the victim, and fled after the shooting is sufficient corroborating evidence].)

II

*The Court Acted Within Its Discretion*

*To Admit Photographs Of The Victim's Body*

Defendant contends the court abused its discretion under Evidence Code section 352[1] when it admitted five photographs of the victim's body that defendant claims "had *no* probative value; the only purpose served . . . was to inflame the jury." Not so.

The probative value of the photographs was to show the location of the gunshots and manner of killing, which was relevant to the degree of murder. Namely, the photographs were probative of whether defendant was guilty of first degree malice murder. Under this theory, the People had to prove defendant either unlawfully intended

---

[1]    Evidence Code section 352 states as follows: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

to kill (express malice) or the natural and probable consequences of defendant's act were dangerous to human life (implied malice). The at-issue photographs showed the victim's body and face bloodied and disfigured from the gunshots. The location of the shots (to the chest and the face) and the manner of shooting (close range) tended to show both an unlawful intent to kill and acts dangerous to human life.

Contrasted with the probative value of the photographs, the prejudicial effect was minimized by the court limiting the number of photographs to five (out of the eight originally proffered by the People). As the court noted, those five were not cumulative because they "show[ed] different perspectives of the victim's injuries both close-up and at various angles."

Giving this appropriate weighing of the probative value against the prejudicial effect of the photographs, the trial court was well within its discretion to admit the five photographs. (See *People v. Wilson* (1992) 3 Cal.4th 926, 938 [where the record reflects the trial court weighed the probative value of the photographs against their potential prejudicial effect before admitting them, it properly exercised its discretion].)

III

*The Consciousness Of Guilt Instructions*

*Did Not Permit Irrational Inferences About Defendant's Guilt*

Defendant contends the consciousness of guilt instructions given here relating to false statements (CALCRIM No. 362), fabrication of evidence (CALCRIM No. 371) and flight (CALCRIM No. 372) allowed the jury to draw irrational inferences of guilt in violation of his right to due process of law.[2] Not so.

---

**2**    CALCRIM No. 362, as given here, reads as follows: "If the defendant made a false or misleading statement before this trial relating to the charged crime knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt. [¶] If you conclude the defendant made the statement it is up to you to decide its meaning and importance.

4

Defendant acknowledges our Supreme Court has repeatedly approved consciousness of guilt instructions. (E.g., *People v. Howard* (2008) 42 Cal.4th 1000, 1020-1021 [CALJIC No. 2.52 & CALCRIM No. 372 (flight)]; 1024-1025 [CALJIC No. 2.03 & CALCRIM No. 362 (false statements)]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 101-102 [CALJIC Nos. 2.04 (fabricating evidence) & 2.06 (suppressing evidence)].)

Defendant contends, however, that unlike their CALJIC counterparts, the CALCRIM instructions here used the phrase "aware of his guilt." Thus, he reasons, the instructions go beyond telling jurors that false statements, fabrication of evidence or flight may be considered as indicative of guilt. They tell jurors that such conduct may show the defendant was "aware of his guilt." The Court of Appeal for the Fifth Appellate District rejected this claim in *People v. Hernández Ríos* (2007) 151 Cal.App.4th 1154. (See also *People v. Paysinger* (2009) 174 Cal.App.4th 26, 29-32.) As the Fifth District explained, the use of the term "aware of his guilt" in the CALCRIM consciousness of guilt instructions does not create an inference any different from that permitted by their CALJIC predecessors. (*Hernández Ríos*, at pp. 1158-1159.) We agree with *Hernández*

---

However, evidence that the defendant made such a statement cannot prove guilt by itself."

CALCRIM No. 371, as given here, reads as follows: "If the defendant tried to obtain false testimony, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. [¶] However, evidence of such an attempt cannot prove guilt by itself."

CALCRIM No. 372, as given here, reads as follows: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. [¶] If you conclude the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

*Ríos*, follow the lead of the California Supreme in rejecting challenges to the predecessor instructions, and reject defendant's contention.

DISPOSITION

The judgment is affirmed.


                                                           ROBIE               , J.


We concur:


        RAYE             , P. J.


        DUARTE        , J.