Filed 6/16/16  P. v. Alfaro CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ARMANDO ALEXANDER ALFARO,<br><br>    Defendant and Appellant. | F070937<br><br>(Super. Ct. No. F14907676)<br><br>**OPINION** |

_____

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Fresno County.  Gary D. Hoff, Judge.

Maureen M. Bodo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

\*        Before Levy, Acting P.J., Gomes, J. and Detjen, J.

Armando Alfaro was found guilty of two felonies, attempting to dissuade a witness from testifying, and possession of a firearm by a person previously convicted of a felony as a result of a domestic dispute with Barbara R. The trial court declared a mistrial on two other counts after the jury could not reach a verdict.

Alfaro argues the trial court prejudicially erred when it instructed the jury with CALCRIM No. 372, the flight instruction, because it was not supported by the evidence in the case. We conclude that even if error occurred, Alfaro was not prejudiced thereby. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

*Pleadings*

The information charged Alfaro with assault with a firearm (Pen. Code, § 245, subd. (a)(2))[1] (count 1), dissuading a witness by force or threat (§ 136.1, subd. (c)(1)) (count 2), possession of a firearm by a felon (§ 29800, subd. (a)(1)) (count 3), and misdemeanor battery (§ 243, subd. (e)(1)) (count 4). Counts 1 and 2 alleged as an enhancement that Alfaro personally used a firearm within the meaning of section 12022.5, subdivision (a). Finally, the information alleged Alfaro had incurred a prior conviction that constituted both a serious felony within the meaning of section 667, subdivision (a)(1), and a strike within the meaning of section 667, subdivisions (b)-(i).

*Testimony*

The victim, Barbara, testified that on the day in question she was living with Alfaro. She had gone to seek employment that afternoon. When she returned to her apartment the door was locked. Alfaro let her into the apartment. Barbara became angry because Alfaro had a woman in the apartment, and Alfaro was mad because Barbara was late getting home. There was yelling between the two, but Alfaro did not touch her.

---

[1]     All statutory references are to the Penal Code.

2.

Barbara said she lied to the police officer who responded when she told her Alfaro had pushed her against the wall. She also lied when she told the officer Alfaro pulled a gun on her and put it in her mouth. She lied when she told the officer that Alfaro told her to call the police, but she would be "halfway dead or dead" by the time they arrived, and he would be gone.

Barbara was not afraid Alfaro would retaliate against her if she made a false police report. She lied to the police officer when she told her Alfaro always carried a gun, as she had never seen him with a gun. She told the officer she was afraid Alfaro would kill her with his gun, but she wasn't really afraid. She also lied when she told the officer she did not follow through with prosecuting prior charges because she was afraid Alfaro would kill her.

Regarding a prior incident in January 2014, Barbara remembered being in the hospital for three or four days, and remembered returning to her apartment. However, she could not remember what happened after returning to her apartment because she was on medication. After reviewing the police report from that day, she recalled telling the police that Alfaro became upset with her and struck her on the face, but that was a lie. She also denied Alfaro placed her in a choke hold, pulled a gun on her, or asked her if she wanted to die.

On cross-examination Barbara testified she was angry with Alfaro at the time of the incident and wanted to seek revenge.

Fresno Police Officer Tawnee Smith responded to a report of a domestic disturbance on the date in question. She was flagged down by Barbara, who was crying. Barbara was very upset and it took Smith a few minutes to calm her down. When she calmed down, Barbara said she was out looking for employment, and came home later than expected. An argument ensued, and Alfaro pushed her up against the wall, put a black revolver in her mouth, and commented that by the time Barbara could call the police she would be dead or halfway dead. Barbara said she called the police because she

3.

was afraid Alfaro would kill her. Barbara explained Alfaro had put a gun in her mouth several times, and the last time she reported the incident to the police Alfaro beat her up once he was released.

Barbara reported the incident to the police about two and one-half hours after it took place. Barbara explained Alfaro gathered some clothing, took a shower, put some items in a backpack, and then went to his mother's house. Barbara was not able to call the police until after Alfaro left.

Smith also responded to a report of domestic violence made by Barbara in January 2014. Barbara had been in the hospital for several days. When she came home she was very tired and wanted to rest. She asked Alfaro to lie down with her. Alfaro responded with "Why would I lay down with a bitch like you?" Barbara responded that Alfaro should have thought of that before. Alfaro became upset, put her into a choke hold, slapped her, and placed the black revolver in her mouth.

Fresno Police Officer Gerardo Grimaldo located Alfaro on the date of the current incident at his mother's house. Alfaro was in the backyard walking from a small shed. Grimaldo and his partner arrested Alfaro. When they searched the shed they found a backpack. Inside the backpack was a handgun.

Finally, the People called Robert Meade, a marriage and family therapist. Meade did not interview anyone involved in the case, but testified about the cycle of domestic abuse.

*Closing Argument, Verdict and Sentencing*

The primary area of focus by both attorneys was the credibility of Barbara. The prosecutor argued her statement to the police was believable, while her trial testimony was an example of the type of testimony given by victims of domestic violence. Defense counsel argued the jury should reject all of Barbara's statements because she was untruthful, and reject the charges because they were fabricated by a person seeking revenge against Alfaro.

4.

The jury found Alfaro guilty of attempting to dissuade a witness from testifying through the use of force or fear (count 2), and possession of a firearm by a felon (count 3). The jury found not true the allegation that Alfaro personally used a firearm in the commission of count 2. The jury could not reach a verdict on the remaining counts. The trial court declared a mistrial as to those counts, and the prosecutor dismissed both counts.

Alfaro admitted he suffered a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b)-(i), and that conviction was also a serious felony conviction within the meaning of section 667, subdivision (a)(1).

The trial court sentenced Alfaro to the midterm of three years for the dissuading a witness count, doubled that because of the strike prior, and added five years for the prior serious felony conviction for a total term of 11 years. The sentence on the firearm count was imposed concurrently.

## DISCUSSION

Alfaro argues the trial court erred when it instructed the jury with the flight instruction.[2] This instruction informs the jury that if it concludes the defendant fled the scene of the crime immediately after the crime occurred, the jury may, but is not required to, infer a consciousness of guilt. The prosecution requested the instruction, and the trial court gave it over defense counsel's objection. Alfaro argued in the trial court, and argues on appeal, that there was no evidence he attempted to flee immediately after the crime was committed. He points out Barbara told Officer Smith that after the altercation, Alfaro took a shower, gathered some clothes in his backpack, and left Barbara's

---

[2] The trial court instructed the jury "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

5.

apartment approximately two and one-half hours later. Alfaro then went to his mother's home, which was only a short distance from Barbara's apartment. Since Barbara knew Alfaro's destination, it is reasonable to infer he told her where he was going. Since Alfaro was located where Barbara said he was going, it is logical to infer Alfaro did not attempt to evade capture, although he attempted to hide the backpack and revolver in the shed at his mother's residence.

It appears the prosecutor's position was that Barbara could not call the police until Alfaro left the apartment for fear he would hurt her if she attempted to do so in his presence. This argument, however, does not establish immediate flight from the scene, so it is questionable whether the flight instruction should have been given.

We need not decide whether the trial court erred, however, because even if we assume error occurred Alfaro cannot establish any prejudice as a result of the instruction. We begin by noting the jury could not reach a decision on the assault with a firearm count (count 1) and the battery count (count 4) suggesting at least some of the jurors did not believe parts of Barbara's statement to Officer Smith. The prosecutor argued Alfaro's possession of the handgun found in the shed constituted count 3 so the possession of a firearm by a felon count was unrelated to the alleged flight. Therefore, the only count allegedly affected by the instruction is the dissuading a witness count (count 2).

We also note the jury was not instructed that Alfaro, in fact, fled the scene of the alleged crime. Instead, the jury was instructed that if it determined that Alfaro fled the scene of the crime immediately after the crime was committed, this conduct may be evidence of guilt. Given the weak evidence of flight, the jury could well have found the instruction inapplicable to the facts of the case.

Nor did the prosecution emphasize the flight instruction. The prosecution did not directly refer to the flight instruction during closing argument. The only portion of closing argument in which the idea of flight was mentioned occurred when the prosecutor

6.

was discussing the firearm count. The prosecutor began his argument by discussing the evidence related to that count. After reviewing the relevant evidence, the prosecutor stated "I suggest to you, ladies and gentlemen, he was hiding in the shed because he didn't want the police to find him because he [knew] he had a gun and he's a felon, knew he wasn't supposed to have a gun. ¶ He also knew the reason [he] was hiding in the back, or the reason he fled the crime scene was because he knew he committed an assault and he suspected Barbara R. had called, had called the police to report the assault." In rebuttal, the prosecutor again mentioned, without emphasizing, that Alfaro left Barbara's apartment after the assault.

The prosecutor did not argue Alfaro's flight was evidence of guilt, nor did he make direct reference to the flight instruction. Under these circumstance it seems highly unlikely the jury placed undue reliance on the instruction.

The jury's inability to reach a verdict on the assault count and the battery count also suggest it did not rely on flight as evidence of guilt. Instead, it suggests the jury as a whole weighed the evidence before it and based its vote on each individual juror's evaluation of the credibility of Barbara. We thus reject Alfaro's argument which is, in essence, the only way the jury could have reached a guilty verdict on the dissuading a witness count was by relying on the flight instruction.

Some of the jurors apparently did not believe an assault occurred in Barbara's apartment, but all agreed Alfaro had attempted to dissuade Barbara from testifying, and also agreed he did not use a firearm when doing so.[3] If some of the jurors rejected Barbara's statement to Officer Smith, one would expect an inability to reach a verdict on the dissuasion count. While these verdicts may appear to be inconsistent, "[t]he law generally accepts inconsistent verdicts as an occasionally inevitable, if not entirely

---

**3** When queried by the trial court about the deadlock on counts 1 and 4, the jury foreman stated the jury was split five to five on each count, with two jurors abstaining from voting.

satisfying, consequence of a criminal justice system that gives defendants the benefit of a reasonable doubt as to guilt, and juries the power to acquit whatever the evidence." (*People v. Palmer* (2001) 24 Cal.4th 856, 860.)  Nonetheless, it is not reasonable to infer from the verdict that the flight instruction had any influence on the verdict finding Alfaro guilty of dissuading a witness.  For these reasons, we conclude that if the trial court erred, Alfaro did not suffer any prejudice.

Alfaro raises two additional points which require little discussion.  First, the courts of this state have repeatedly rejected the argument that the flight instruction somehow lessens the prosecution's burden of proof thereby resulting in a violation of a defendant's constitutional right to due process.  (*People v. Boyce* (2014) 59 Cal.4th 672, 691; *People v. Rios* (2007) 151 Cal.App.4th 1154, 1159.)  Accordingly, the erroneous giving of a flight instruction is a state law error, and is reviewed pursuant to the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836, i.e., whether the record leads us to conclude it is reasonably probable that a result more favorable to the appealing party would have occurred in the absence of error.  (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129-1130.)  In this case, the appropriate standard of review is not significant because we would have reached the same result even if we applied the "more stringent" standard of review for federal constitutional error found in *Chapman v. California* (1967) 386 U.S. 18, 24, i.e., whether the error was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.