Filed 9/23/25  Jacobs v. Sharp Healthcare CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VALORI JACOBS, | D084337 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2019-00070139-CU-MM-CTL) |
| SHARP HEALTHCARE, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Valori Jacobs, in pro. per., for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Amy E. Rankin, David Sohn; Dummit, Buchholz & Trapp, Scott D. Buchholz, Courtney S. Becker, and Amanda K. Behrendt, for Defendants and Respondents.

### INTRODUCTION

This is the second appeal in this medical malpractice action.  Valori Jacobs sued her former physician for medical malpractice and lack of informed consent, alleging he was negligent in performing her sinus surgery and failed to disclose all risks and procedures associated with the surgery.

Jacobs also sued Sharp Healthcare and Sharp-Rees Stealy Medical Group, Inc. (collectively, Sharp), which operated the hospital facility where she was treated and had the surgery, alleging her physician was an "employee and/or contracted agent" of Sharp.

In the prior appeal, we reversed the trial court's ruling sustaining Sharp's demurrer to Jacobs's causes of action. (*Jacobs v. Sharp Healthcare* (Jan. 25, 2023, D079404) [nonpub. opn.] (*Jacobs*).) The trial court had ruled in part that her operative complaint was fatally uncertain as to Sharp's liability for her physician's actions. We disagreed and held Jacobs sufficiently alleged Sharp's liability on the basis her physician was Sharp's ostensible agent. Critical to our holding, nothing in the operative complaint revealed Jacobs received notice her physician was not a Sharp agent or employee. (*Ibid.*)

Following remand, Sharp successfully moved for summary judgment on numerous grounds, including that Jacobs was, in fact, notified that her physician was not a Sharp agent or employee. Jacobs now appeals the entry of summary judgment. Because she fails to demonstrate triable issues of material fact precluded summary judgment on ostensible agency, we affirm the entry of summary judgment in favor of Sharp.

FACTUAL AND PROCEDURAL BACKGROUND

Jacobs is a former patient of Dr. James Amsberry, an ear, nose and throat (ENT) specialist. Amsberry performed sinus surgery on Jacobs on February 28, 2017, at a facility operated by Sharp. She underwent a revision sinus surgery on December 20, 2019.

*Proceedings Before Summary Judgment*

A.     *Lawsuit and Second Amended Complaint*

On December 31, 2019, Jacobs filed this action.  In her operative pleading, a verified second amended complaint (SAC), she alleged that lesions were removed from her left sinus during her revision surgery.  She stated she was "not sure what these lesions are" but believed they were stents Dr. Amsberry had placed in her nasal cavity and then failed to remove.

Jacobs alleged she suffered infections, pain and suffering, corrective surgery, and other issues because of the sinus surgery performed by Dr. Amsberry.  She further alleged she was not informed of all procedures and risks associated with the sinus surgery, and she "believe[d] she was part of some clinical trials without her consent."  She alleged Amsberry was an "employee and/or contracted agent of [Sharp] . . . acting in the course and scope of his capacity as an employee and/or contracted agent of [Sharp]" and Sharp was liable "under the doctrine of 'respondeat superior.' "  She asserted causes of action for (1) professional negligence, (2) lack of informed consent, (3) "[i]ntentional and deliberate [f]raud," and (4) "medical incompetence."

B.     *Sharp's Demurrer*

Sharp demurred to the SAC.  It argued the statute of limitations under Code of Civil Procedure[1] section 340.5 had run on Jacobs's first cause of action for professional negligence.  Sharp further argued the entire SAC failed for uncertainty because Dr. Amsberry, as a physician, was legally precluded from being a Sharp employee, and there were no allegations otherwise establishing how it was liable for Amsberry's actions.  The trial

---

[1]     Further unspecified statutory references are to the Code of Civil Procedure.

court sustained the demurrer without leave to amend and entered a judgment of dismissal.

C.    *Jacobs's First Appeal*

Jacobs appealed. In *Jacobs, supra,* D079404, we reversed the demurrer ruling as to her causes of action against Sharp for professional negligence and lack of informed consent.[2] We did so for two reasons. First, we found the allegations of the SAC did not clearly and affirmatively establish a statute of limitations defense to professional negligence. We noted that Dr. Amsberry was alleged to have repeatedly reassured Jacobs about her ongoing postsurgical symptoms, and reasoned she was entitled to rely on her doctor's disclaimers. We held that when liberally construed, Jacobs's allegations supported the conclusion she did not discover her injuries and their negligent cause until within one year of the date she originally filed the claim. (*Ibid.*)

Second, we found Jacobs's causes of action for professional negligence and lack of informed consent were not fatally uncertain as to the basis for Sharp's liability. We held the SAC "sufficiently alleged Sharp's liability for [Dr. Amsberry's] actions on the basis of ostensible agency." (*Jacobs*, *supra*, D079404.) We explained that under California law, Sharp, the operator of the hospital facility, "may be held liable for a physician's wrongdoing when the physician is an ostensible agent of the hospital." (*Ibid.*, citing *Markow v.*

_____

2    In addition to Sharp (and Dr. Amsberry), Tom-Oliver Klein, M.D. (identified in the SAC as "Tom Oliver-Klein") and Ahmed Turek, M.D. were also named in the SAC as defendants. Klein and Turek were also respondents, along with Sharp, in Jacobs's first appeal. (See *Jacobs*, *supra*, D079404.) However, this court dismissed the appeal as to Klein and Turek upon the parties' written stipulation, thus leaving intact the judgment of dismissal as to these two defendants.

4

*Rosner* (2016) 3 Cal.App.5th 1027, 1038 (*Markow*) and *Mejia v. Community Hospital of San Bernardino* (2002) 99 Cal.App.4th 1448, 1453 (*Mejia*).) We explained, "Where a patient seeks to hold a hospital liable for the negligence of a physician, the doctrine of ostensible agency requires two elements: '(1) conduct by the hospital that would cause a reasonable person to believe that the physician was an agent of the hospital, and (2) reliance on that apparent agency relationship by the plaintiff.' " (*Jacobs*, *supra*, D079404, quoting *Mejia*, at p. 1453.) In this scenario, "ultimately, 'there is really only one relevant factual issue: whether the patient had reason to know that the physician was not an agent of the hospital.' " (*Jacobs*, *supra*, D079404 [cleaned up], quoting *Markow*, at p. 1038.)

We evaluated Jacobs's allegations under these rules and found ostensible agency was "readily inferred" from the SAC. (*Jacobs*, *supra*, D079404 [cleaned up].) We reasoned the facts in the SAC supported this inference, and nothing in the SAC revealed that Sharp gave Jacobs " 'contrary notice' " that Dr. Amsberry was an independent contractor and not an agent or employee of Sharp. (*Jacobs*, *supra*, D079404 [quoting *Markow*, *supra*, 3 Cal.App.5th at p. 1038 and parenthetically describing *Markow*, at p. 1032 as a case "reversing judgment after jury verdict against hospital on ostensible agency theory where hospital 'unambiguously informed' plaintiff in conditions of admission forms that 'all physicians furnishing services to patients were independent contractors, not agents or employees of [the hospital]' "].) For these reasons, we reversed the judgment with directions to

enter a new order overruling Sharp's demurrer on the first and second causes of action and sustaining it on the remaining causes of action.[3]

## II.

### *Summary Judgment Proceedings*

A.    *Sharp's Motion for Summary Judgment*

After the case was remanded, Sharp moved for summary judgment. It argued (1) Jacobs's medical records and deposition testimony showed her causes of action were time-barred; and (2) Jacobs's causes of action failed as to Sharp because she received notice Dr. Amsberry was an independent contractor and not a Sharp agent or employee. Assuming Jacobs could overcome the evidence refuting the existence of an ostensible agency relationship between Amsberry and Sharp, Sharp further argued (3) Amsberry did not deviate from the applicable standard of care; (4) Jacobs suffered no "measurable" injuries or damages from the sinus surgery; (5) Amsberry obtained Jacobs's informed consent for the surgery; and (6) Jacobs was not harmed by any assertedly undisclosed risks or results of the surgery.

As supporting evidence, Sharp submitted medical records, excerpts of Jacobs's deposition testimony, and the declaration of James K. Bredenkamp, M.D., Sharp's retained expert and (like Dr. Amsberry) an ENT specialist. As relevant here, the medical records included a consent form signed by Jacobs

---

[3]    Jacobs did not challenge the ruling sustaining Sharp's demurrer to her third and fourth causes of action, thus leaving intact the dismissal of Sharp from those causes of action. (See *Jacobs*, *supra*, D079404.)

on February 28, 2017 at 0725 (i.e., 7:25 a.m.).[4] The first sentence of the form stated, "Your physician has recommended a surgery or special diagnostic or therapeutic procedure to be performed at a Sharp HealthCare facility." Among the form's disclosures was the following statement: "The physicians, surgeons and specialists who perform services for you are not the agents, servants or employees of the hospital or, in most cases, of each other. They are independent contractors who are responsible directly to you." Sharp argued Jacobs's causes of action for professional negligence and lack of informed consent failed because her signature on the form demonstrated she was aware Amsberry was not a Sharp agent, servant, or employee.

Dr. Bredenkamp, Sharp's expert, reviewed and summarized Jacobs's medical records and offered opinions about her care and treatment. He opined that Sharp, through Dr. Amsberry, met the applicable standard of care with regard to the care and treatment of Jacobs on February 28, 2017; adequately advised Jacobs of the risks of sinus surgery and obtained her informed consent to perform the surgery; and did not "cause any injury" to Jacobs on February 28 nor did Jacobs suffer "measurable injuries or damages" from her surgery. He elaborated on these opinions and averred they were made to a reasonable degree of medical probability. Sharp's arguments that there were no triable issues of fact as to whether Dr. Amsberry violated the applicable standard of care, failed to obtain informed consent, or caused resulting damages, relied on this declaration.

Sharp's statute of limitations defense was premised on an August 17, 2017 e-mail exchange in which Jacobs asked Dr. Amsberry whether he had

---

[4]     Jacobs alleged in the SAC that she arrived for her sinus surgery before 6 a.m. on February 28, 2017, and the surgery was completed at approximately 4 p.m.

heard of empty nose syndrome and said its symptoms seemed to match what she was feeling. Amsberry responded that he "[did]n't think this is ENS" and recommended products Jacobs could use for her symptoms. Sharp argued Jacobs suspected she had empty nose syndrome due to her surgery as of the date of this email exchange, triggering the statutes of limitations for both causes of action and rendering both untimely.

Sharp submitted a separate statement with a total of 117 undisputed material facts and references to supporting evidence. Its motion was noticed for hearing on March 29, 2024.

B. *Jacobs's Opposition*

Jacobs, appearing as a self-represented litigant, responded to the motion by filing documents with the following titles: (1) "Jacob's Response to Bredencamp Declaration"; (2) "Plaintiff Jacobs Objection to Defendants Sharp Healthcare, et al Motion for Summary Judgement/ Adjudication Judgement"; and (3) "NOL in Support of Plaintiffs Objection to Defendants Motion for Summary Judgement Adjudication." (Boldface and capitalization omitted.)

The first document had multiple components. First, Jacobs made a series of assertions disagreeing with Dr. Bredenkamp's opinions. Next, she responded to the first 79 undisputed material facts from Sharp's separate statement. Many, but not all, of her responses included references to materials she characterized as evidence.

In the second document, Jacobs argued she did not consent to balloon dilation and ethmoidectomies; she suffered health issues that were complications from the sinus surgery; and a "foreign object" was discovered during her revision surgery. She also set forth a second declaration averring, among other things, that "[a]ll mentioned individuals in this matter are

8

associated with Sharp . . . either as employees or agents"; Dr. Amsberry did not inform her he would perform an ethmoidectomy or balloon dilation sphenoidectomy; and medical reports "from other ENTs . . . corroborate . . . the medical conditions and diagnoses I have reported."

The third document, the "NOL," listed her lodged exhibits. It also contained a third declaration in which Jacobs averred that Sharp and Dr. Amsberry had breached the applicable duty of care, had performed experimental procedures on her, and had failed to provide her an " 'experimental subject's bill of rights.' "[5]

C.     *Sharp's Reply*

Sharp filed a total of 54 evidentiary objections to Jacobs's declarations, most of her exhibits, and the assertions in her response to Dr. Bredenkamp's declaration.

Sharp argued that Jacobs had failed to respond to its moving evidence with competent expert testimony or admissible evidence, and she therefore failed to demonstrate a triable issue as to any material fact underlying its motion. It also argued her response to its separate statement did not comply with the rules governing separate statements, and this alone was grounds for deeming its material facts undisputed and granting its motion.

D.     *Summary Judgment Hearing and Jacobs's Additional Filings*

On March 28, 2024, the day before the hearing, the trial court issued a minute order indicating its tentative ruling was to grant Sharp's motion in its entirety.

At 6:21 a.m. on the morning of the hearing, Jacobs filed four new documents: (1) "Jacobs Request for Judicial Notice in Opposition to

---

[5]     Jacobs's first three declarations were not signed. However, Sharp did not object to the lack of signature.

Defendant Sharp et al Motion for Summary Judgement-Adjudication Amended"; (2) "Jacobs Separate Statement in Opposition to Defendants Sharp Healthcare, et al Motion for Summary Judgement/ Adjudication Judgement Amended"; (3) "Jacob's Response to Defendants Evidentiary Objection and Reiteration of Response to Expert Declaration Ame[n]ded"; and (4) "Jacobs Evidence in Opposition to Defendant Sharp et al Motion for Summary Judgment-Adjudication – Amended." (Boldface and some capitalization omitted.) She did not ask for permission to file these documents after the statutory deadline. (See § 437c, former subd. (b)(2) [opposition to summary judgment motion must be served and filed 14 days in advance of the date of the hearing "unless the court for good cause orders otherwise"].)

In the first document, Jacobs sought judicial notice of records (e.g., "Plaintiff's Medical Records"; "Correspondences and Formal Complaints") but did not attach the referenced records. The second document contained arguments followed by a declaration identical to the one in Jacobs's "objection," except that it described Jacobs as an expert. (Boldface and capitalization omitted.) The third document was the same as Jacobs's original "[r]esponse," except that it included responses to 10 of Sharp's evidentiary objections. (Boldface and capitalization omitted.) The fourth document was largely new; in it, Jacobs provided free-form responses to many of Sharp's undisputed material facts.

At the hearing, Jacobs objected to Dr. Bredenkamp's declaration and said there were facts that refuted his opinions. She did not notify the trial court of her recent filings. The court took the matter under submission.

E. *Trial Court Ruling and Entry of Judgment*

On April 3, 2024, the trial court issued a minute order granting the motion. The court sustained 25 of Sharp's evidentiary objections, thereby excluding most of Jacobs's documentary exhibits and many of her declaration averments, including her assertion that all individuals "in this matter" were employees or agents of Sharp.

On the merits of the motion, the trial court first observed that Dr. Bredenkamp opined Sharp, through Dr. Amsberry, met the applicable standard of care and obtained Jacobs's informed consent, and that Jacobs did not suffer measurable injuries or damages from Amsberry's surgery. The court stated Sharp's production of an expert opinion shifted the burden to Jacobs to come forward with conflicting expert evidence.

The trial court then evaluated Jacobs's response and found it procedurally and substantively inadequate. Procedurally, the court found her response separate statement failed to comply with California Rules of Court, rule 3.1350(e), and ruled this was a sufficient ground for granting the motion. Substantively, it found Jacobs failed to provide a qualified expert opinion raising any triable issue of fact and failed to address "the statute of limitations issue." The court then granted the motion as to her professional negligence cause of action.

Turning to the cause of action for informed consent, the trial court found Jacobs had failed to address the evidence Dr. Amsberry was an independent contractor responsible for providing informed consent, and failed to raise triable issues of fact as to whether the cause of action was barred by the statute of limitations. It then granted the motion as to the informed consent cause of action and in its entirety.

11

Judgment in favor of Sharp was entered on September 16, 2024.[6]

## DISCUSSION

Jacobs, who is representing herself in this appeal, raises several claims of error. She contends, among other things, that the trial court erred in granting summary judgment because there were triable issues of material fact with respect to whether Dr. Amsberry was an ostensible agent of Sharp. Like Jacobs, we interpret the court's ruling as embracing a finding it was undisputed Amsberry was not Sharp's ostensible agent.[7] Although Sharp did not address ostensible agency in its response brief, it is Jacobs who bears the burden of demonstrating error. As we explain, she fails to carry this burden. And because Sharp's alleged liability to Jacobs is premised on an ostensible agency theory, we can and do affirm summary judgment on this ground without the need to consider her remaining claims of error.

### I.

### *Standard of Review*

"A defendant moving for summary judgment 'bears the burden of persuasion that one or more elements of the cause of action in question

---

[6] In her notice of appeal, Jacobs identified the minute order granting summary judgment as the appealed order. In an October 14, 2024 order, this court construed the notice of appeal as taken from the judgment.

[7] Although the trial court's wording was imprecise, when it stated there was evidence Dr. Amsberry was an independent contractor, it was clearly referring to the notice provided in the Sharp consent form signed by Jacobs. This notice, in turn, was offered by Sharp for the sole purpose of showing Jacobs "*was aware* that Defendant Dr. Amsberry was not an agent, servant, or employee of Defendants" (italics added), thus negating its alleged liability for Amsberry's torts. By taking Sharp's evidence as true and finding Jacobs failed to address it (and thereby refute it), the court necessarily found Sharp's evidence of the absence of ostensible agency was undisputed, and its order granting summary judgment in turn embraced this finding.

cannot be established, or that there is a complete defense thereto.' The defendant also 'bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' Where, as here, the burden of proof at trial is by a preponderance of the evidence, the defendant must 'present evidence that would require such a trier of fact *not* to find any underlying material fact more likely than not.' If the defendant carries this burden, the burden of production shifts to the plaintiff 'to make a prima facie showing of the existence of a triable issue of material fact.' The plaintiff must present evidence that would allow a reasonable trier of fact to find the underlying material fact more likely than not." (*Franklin v. Santa Barbara Cottage Hospital* (2022) 82 Cal.App.5th 395, 402–403 (*Franklin*) [cleaned up].)

We review a decision to grant summary judgment de novo. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) "Our obligation is to determine whether issues of fact exist, not to decide the merits of the issues themselves." (*Franklin*, *supra*, 82 Cal.App.5th at p. 403 [cleaned up].) We must "liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz*, at p. 1037.)

" '[A]lthough we use a de novo standard of review here, we do not transform into a trial court.' " (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379.) We approach a summary judgment appeal, as with any appeal, with the presumption the appealed judgment is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.) Therefore, "on review of a summary judgment, the appellant has the burden of showing error, even if [she] did not bear the burden in the trial court." (*Dinslage,* at p. 379

13

[cleaned up].)  The appellant "still bears the affirmative burden to show error" even when the appeal is unopposed.  (*In re Marriage of F.M. and M.M.* (2021) 65 Cal.App.5th 106, 110, fn. 1 [cleaned up].)

II.

*Analysis*

The threshold question when evaluating a grant of summary judgment is whether the moving party met its burden of production and persuasion.  (§ 437c, subd. (p)(2).)  We therefore start by addressing an apparent contention by Jacobs that Sharp failed to meet its burden of establishing Dr. Amsberry was not its ostensible agent.  Jacobs asserts she "was not given notice that Dr. Amsberry was an independent contractor" and "[n]o disclosure or waiver advised her that he was not a Sharp employee or that he operated independently."  The record does not support her assertions.

As we explained in our prior opinion, under California law, "[w]here a patient seeks to hold a hospital liable for the negligence of a physician, the doctrine of ostensible agency requires two elements:  '(1) conduct by the hospital that would cause a reasonable person to believe that the physician was an agent of the hospital, and (2) reliance on that apparent agency relationship by the plaintiff.' "  (*Jacobs*, *supra*, D079404, quoting *Mejia*, *supra*, 99 Cal.App.4th at p. 1453.)  " 'Ultimately, "there is really only one relevant factual issue:  whether the patient had reason to know that the physician was not an agent of the hospital." ' "  (*Jacobs, supra,* D079404, quoting *Markow*, *supra*, 3 Cal.App.5th at p. 1038.)

Contrary to Jacobs's assertions, Sharp's moving evidence included the consent form signed by Jacobs.  As we explain, the form was evidence Jacobs had reason to know Dr. Amsberry was not an agent of Sharp, making it

14

sufficient to meet Sharp's moving burden to establish the absence of ostensible agency.  (§ 437c, subd. (p)(2).)

The facts of *Markow* are instructive.  The plaintiff in *Markow* sought chronic pain treatment from a physician after learning he was the medical director of the pain center of Cedars-Sinai Medical Center (Cedars).  (*Markow*, *supra*, 3 Cal.App.5th at p. 1032.)  Although the physician was a partner in a medical group, not a Cedars employee, he used business cards imprinted with Cedars's name, and his letterhead included the Cedars logo.  During the period the physician treated the plaintiff, the plaintiff signed and initialed 25 forms that bore the Cedars logo and stated either " 'physicians are independent contractors and are neither employed by nor agents of this facility' " or " '[a]ll physicians and surgeons furnishing services to the Patient . . . are independent contractors and are <u>not</u> employees or agents of the Hospital.' "  (*Id.* at pp. 1033, 1039, boldface omitted.)

On the basis of this evidence, the *Markow* court reversed a jury verdict holding Cedars liable for the physician's negligence on an ostensible agency theory.  The court reasoned that by initialing the forms the plaintiff indicated he received actual notice of his doctor's independent contractor status.  Further, "[t]he wording of the disclaimer in each form . . . was simple and unambiguous, not obtuse 'legalese.' "  (*Markow*, *supra*, 3 Cal.App.5th at p. 1039.)  And even assuming plaintiff relied on other factors, such as Cedars's name and logo on the physician's business cards, they were "negated by the actual notice Cedars provided [the plaintiff.]"  (*Id.* at p. 1042.)  Accordingly, as a matter of law the plaintiff either knew or should have known his physician was an independent contractor and not Cedars's agent or employee.  (*Id.* at p. 1041.)

15

*Wicks v. Antelope Valley Healthcare Dist.* (2020) 49 Cal.App.5th 866 (*Wicks*) is also instructive. In *Wicks*, the plaintiffs' decedent went to the emergency department of a hospital seeking treatment for chest pain. He died of " 'acute dissection of aorta' " eight hours after the emergency room doctor discharged him. (*Id.* at p. 871.) Plaintiffs sought to hold the hospital liable for the physician's actions on an ostensible agency theory. The hospital moved for summary judgment based on evidence the decedent, shortly after arriving at the hospital, signed and initialed a " 'Conditions of Services' " form that stated, "all physicians providing services, including the emergency physician, 'are not employees, representatives or agents of the hospital.' " (*Id.* at p. 872; see *id. at* p. 870.) The trial court granted summary judgment, reasoning the decedent received " 'actual notice that the [hospital's] emergency department physicians were independent contractors.' " (*Id.* at p. 874.)

On appeal, the plaintiffs argued an admission form cannot negate ostensible agency as a matter of law when the purported agency relationship arises in the emergency room setting, in which the patient does not choose the physician who provides treatment. (*Wicks*, *supra*, 49 Cal.App.5th at pp. 882–883.) The court disagreed. It reasoned that in other cases dealing with the emergency room setting, there was either no evidence the hospital gave the patient notice its physicians were independent contractors (*id.* at p. 883 [discussing *Mejia*, *supra*, 99 Cal.App.4th at p. 1450]), or there was evidence the patient was in no condition to understand the admission form (*Wicks*, at p. 883 [discussing *Whitlow v. Rideout Memorial Hospital* (2015) 237 Cal.App.4th 631, 663–634 (*Whitlow*)]). Here, by contrast, the decedent did receive such notice, and there was "nothing to suggest" the decedent was incapable of understanding the admission form. (*Wicks*, at p. 883.)

16

Moreover, the form's language was "straightforward," devoid of "obtuse legalese," and therefore gave the decedent "meaningful written notice, acknowledged by [the decedent] at the time of admission, . . . when he was alert, oriented and cooperative, that the staff physicians were not employees or agents." (*Id.* at pp. 883, 884.)

The holdings of *Markow* and *Wicks* support the conclusion the signed consent form filed with Sharp's motion was sufficient to negate ostensible agency. The consent form, which bore the Sharp logo, informed the patient—identified in the form as Valori Jacobs—her physician had recommended "a surgery . . . or therapeutic procedure to be performed at a Sharp HealthCare facility." It stated, "The physicians, surgeons and specialists who perform services for you are not the agents, servants or employees of the hospital" but rather "are independent contractors who are responsible directly to you." The form was signed by the "Patient[ ]"—Jacobs—on February 28, 2017 at 7:25 a.m., a little over an hour after she allegedly arrived for sinus surgery. And it stated the patient's "signature on this form indicates that . . . [the patient] ha[s] read and understood the information provided in this form."

The content of the form, together with the indicia Jacobs signed and therefore read and understood the information provided, were evidence she received actual notice Dr. Amsberry was an independent contractor and not an agent or employee of Sharp. The language of the form was "simple and unambiguous" (*Markow, supra,* 3 Cal.App.5th at p. 1039) and "straightforward" (*Wicks, supra,* 49 Cal.App.5th at p. 883) with no "obtuse 'legalese' " (*Markow*, at p. 1039; *Wicks*, at p. 883). By producing the signed form, Sharp therefore demonstrated "[Jacobs] had some reason to know of the true relationship between [Sharp] and [her] physician." (*Markow*, at

17

p. 1038.) Accordingly, it was sufficient to meet Sharp's moving burden to establish the absence of ostensible agency.

The burden shifted to Jacobs to produce admissible evidence creating a triable issue on this essential component of her claims against Sharp. (§ 437c, subd. (p)(2).) Jacobs fails to establish that she met this burden. She identifies no admissible evidence in the record creating a triable issue on ostensible agency. Although she filed a declaration stating "[a]ll mentioned individuals in this matter are associated with Sharp . . . either as employees or agents," the trial court sustained Sharp's objections to this averment, and Jacobs has not challenged this evidentiary ruling on appeal.

Instead, Jacobs makes a series of factual assertions aimed at persuading us there is a triable issue. She states she "believed that the physicians at Sharp, including Dr. Amsberry acted as an agent or employee of the medical facility." We disregard this statement because it is unaccompanied by a citation to supporting evidence. (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267 (*Falcon*).) Moreover, ostensible agency exists when "the patient *reasonably* believed the doctor was an agent of the hospital." (*Whitlow*, *supra*, 237 Cal.App.4th at p. 641, italics added.) Jacobs's asserted subjective belief about Amsberry's status does not create a material dispute as to ostensible agency because it does not address whether her belief was reasonable.

Elsewhere in her opening brief, Jacobs states, "Marketing materials, employment agreements, and patient expectations establish agency. . . . At all times known to Plaintiff, Dr. Amsberry is a Physician/Doctor/Surgeon, practicing at Sharp Medical facilities, the surgery on February 28, 2017 was held at Sharp Memorial Hospital, at all times that she went in for care with Dr. Amsberry and other affiliated doctors through Sharp, her health care

18

provider, she was seen and treated at a Sharp facility." She further asserts she "spoke to Dr. Amsberry and other doctors at Sharp facilities," refers to "Sharp's website and marketing material," and states "[h]er email and correspondence through the MyHealth app . . . is owned/operated or controlled by Sharp or 3d party communicator." She notes that the same law firm is representing Sharp and Dr. Amsberry. In her reply brief, she adds that she was "referred to Dr. Amsberry through Sharp Rees-Stealy," "received care, surgical scheduling, billing, and pre-operative instructions exclusively through Sharp's facilities," and "all forms, emails, and instructions came from Sharp's staff and through Sharp's facilities." The effect of these facts, she claims, is that "although there was evidence suggesting that no actual agency existed . . . the only logical conclusion is that ostensible agency exists as a matter of law."

These efforts to establish a triable issue fail. Once again, the facts Jacobs recites are unaccompanied by proper citations to supporting evidence. (*Falcon*, *supra*, 224 Cal.App.4th at p. 1267.) Although her reply brief does include record citations, the citations lead to Sharp's moving evidence, not her opposition evidence, and the pages cited do not match the purportedly referenced materials (a purported "Complaint and Intake" and "Deposition excerpts"). Moreover, so far as we can determine, Jacobs is relying on these facts for the first time on appeal, making it inappropriate for us to consider them.[8] (See *American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195

---

[8]     In her reply brief, Jacobs notes that during the summary judgment hearing, she argued Dr. Amsberry "treats patients at Sharp facilities," "doesn't have a private practice," and is "in their system." Contrary to her apparent belief, unsworn assertions during a hearing are not testimonial and do not constitute evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11; *In re Heather H.* (1988) 200 Cal.App.3d 91, 95.)

19

Cal.App.3d 1271, 1281 ["[I]n reviewing a summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal."].)

In any event, under *Markow*, the facts Jacobs recites in her appellate briefs would not create a triable issue even if we were to consider them. In *Markow*, the plaintiff relied on analogous factors—"the contents of Cedars's Web site," "the location of the pain clinic in a building owned by Cedars and displaying Cedars's name and logo," and "employment of nurses and other pain clinic staff"—to establish ostensible agency. (*Markow, supra*, 3 Cal.App.5th at pp. 1041–1042.) The *Markow* court held that even assuming the plaintiff had knowledge of and relied on each of these factors, "they are nonetheless negated by the actual notice Cedars provided [to the plaintiff] that [his physician] was an independent contractor." (*Id.* at p. 1042.) The same analysis applies here. For this additional reason, Jacobs fails to persuade us of a triable issue on ostensible agency. (See *id.* at p. 1044 [concluding ostensible agency was not a factual issue and "the jury's ostensible agency finding is contrary to law"].)

Next, Jacobs contends agency is "inherently a factual question." While this may be true as a general proposition, as *Wicks* and *Markow* demonstrate, when (as in this case) there is undisputed evidence the patient should have known her physician was not an agent of the hospital facility, ostensible agency is properly adjudicated as a matter of law. (See *Markow, supra*, 3 Cal.App.5th at p. 1039 [ostensible agency is a factual issue " '[u]nless the evidence conclusively indicates that the patient should have known that the treating physician was not the hospital's agent, such as when the patient' . . . received actual notice of the absence of any agency relationship"].)

20

Finally, Jacobs notes that in *Jacobs*, *supra*, D079404, we found she sufficiently alleged Dr. Amsberry was Sharp's ostensible agent. She contends the factual allegations of her SAC, "bolstered by documentary evidence and deposition testimony[,] support a triable issue under *Mejia* and *Eriksen*." We remain unpersuaded. A plaintiff opposing summary judgment cannot rely on allegations in "[her] own pleadings, even if verified, to make or supplement the evidentiary showing required in the summary judgment context." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7.) And Jacobs's vague references to "documentary evidence" and "deposition testimony" are insufficient to meet her appellate burden to identify admissible evidence in the record creating a triable issue as to ostensible agency. As for her case citations, *Mejia* is inapposite because it did not involve evidence the patient was informed of the independent contractor status of the physician. (See *Mejia*, *supra*, 99 Cal.App.4th at pp. 1458–1461.) As for her other citation—to either *Eriksen* or *Eriken v. Physicians Surgical Med. Ctr., Inc.* (2007) 151 Cal.App.4th 1159, 1167—we have tried to locate the case using the names and citation provided. So far as we can determine, no such case exists.

For all these reasons, we conclude Sharp met its moving burden to negate Jacobs's theory of ostensible agency, after which Jacobs failed to carry her burden to produce admissible evidence establishing a triable material fact on that issue.[9] As a result, summary judgment was properly granted in favor of Sharp.

---

[9] Although Jacobs at times references actual agency in her appellate briefs, she admits Sharp's evidence suggested "no actual agency existed" and does not attempt to establish she offered evidence creating a triable issue whether Sharp was liable for Dr. Amsberry's torts under an actual agency theory. To the extent she intended to challenge the summary judgment by

21

DISPOSITION

The judgment entered on September 16, 2024 is affirmed.  The parties are to bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


DO, J.

WE CONCUR:


IRION, Acting P. J.


DATO, J.

---

arguing Sharp failed to meet its moving burden or a triable issue existed on actual agency, any such challenge has been forfeited.  (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal deemed waived]; *Eck v. City of Los Angeles* (2019) 41 Cal.App.5th 141, 146 [same].)